**The STATE of Ohio, Appellee,**

**v.**

**SMITH, Appellant.**

[Cite as *State v. Smith* (1997), 125 Ohio App.3d 342.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA97–01–011.

Decided Oct. 13, 1997.

John F. Holcomb, Butler County Prosecuting Attorney, *Richard A. Hyde* and *John M. Holcomb*, Assistant Prosecuting Attorneys, for appellee.

*David H. Bodiker*, Ohio Public Defender, and *Lori J. Rankin*, Assistant Public Defender, for appellant.

KOEHLER, Judge.

Defendant-appellant, Ricky Smith, appeals a decision of the Butler County Court of Common Pleas dismissing his petition for postconviction relief without holding an evidentiary hearing.

Appellant was indicted on February 18, 1992 for one count of felonious assault in violation of R.C. 2903.11(A)(2) and one count of aggravated burglary in violation of R.C. 2911.11(A)(1). The charges stemmed from an incident that occurred on December 25, 1991, wherein appellant allegedly entered the home of his ex-wife, Susan Smith, and severely beat her with a baseball bat until he left at 9:30 p.m. Appellant pled not guilty to the charges, claiming that at the time of the incident he was watching videos with his then girlfriend, Joyce Shepherd, at his roommate's house.

On June 9, 1992, the case was tried to a jury. Timothy Sargeant, appellant's roommate and long-time friend, testified that appellant was watching videos with a girlfriend at the time of the incident. Shepherd did not testify. The jury found appellant guilty as charged. Appellant's conviction and subsequent sentence

were upheld on direct appeal to this court, *State v. Smith* (Feb. 8, 1993), Butler App. No. CA92–08–154, unreported, 1993 WL 29049.

On September 16, 1996, appellant filed a petition for postconviction relief alleging the denial of effective assistance of counsel because his trial counsel failed to call two key alibi witnesses, Shepherd, who was living in Florida at the time of the trial, and Phyllis Maupin, appellant's sister. Attached to appellant's petition were the affidavits of both Shepherd and Maupin. Shepherd's affidavit stated in relevant part:

"2. On December 25, 1991, I spent the day with my family at my mother's house. At around 6:00 or 6:30 p.m. Ricky Smith [appellant] picked me up at my mother's house.

"3. We drove 8 or 9 miles to an apartment Mr. Smith shared with his roommate, Tim Sergeant [*sic*]. On the way to the apartment we stopped at a carryout to buy beer. We arrived at the apartment at around 6:30 to 7:00 p.m. At that time we began watching videos.

"4. We were watching videos until around 9:30 when Mr. Smith's roommate, Tim Sergeant [*sic*] entered the apartment. Ricky introduced me to his roommate and offered Tim a beer. Tim declined stating that he had to get ready for a date and he was already late.

"5. Mr. Smith drove me home about an hour after Tim left. I knew that I returned home sometime between 11 p.m. and 11:30 because the nightly news was on TV when I returned to my mother's house.

"6. I was with Ricky Smith the entire evening on December 25, 1991, from the time he picked me up at about 6:00 to 6:30 p.m. to between 11:00 and 11:30 p.m. when he dropped me at my mother's house.

"7. At the time Mr. Smith was facing these charges, I had moved to Jacksonville Florida * * *.

"* * *

"9. I made several telephone calls from Florida to Mr. Hedric's office at my own expense. I was not able to contact him, and he did not return my calls.

"10. I was finally able to talk with Mr. Hedric's secretary. She indicated that my testimony would not be required.

"11. I was willing to go to Ohio to testify, and at the time of the trial, my health did not prohibit the journey. However, because the trip from Florida would create a financial burden for me, and Mr. Hedric's secretary indicated that my testimony was not needed, I did not pursue the matter further."

Maupin's affidavit stated in relevant part:

"2. On December 25, 1991, I made Christmas dinner for my family. I invited Rick [appellant] to eat with us.

"3. Rick arrived at my house on December 25, 1991, between 3:30 and 4:00 p.m. Dinner wouldn't be ready for another hour so he left then returned at 5:30 p.m.

"4. After dinner, Rick said he was going to pick up his girlfriend, Joy, and take her to his apartment to watch movies. I told him I would bring some leftover food to his apartment later that evening. Rick left my house at around 6:00 to pick up Joy.

"5. At around 8:45 to 8:50, I left to take some food to Rick's apartment. I knew it was almost 9:00 p.m. because I told me [*sic*] husband to get our son ready for his nine o'clock bedtime.

"6. It took me approximately 5 minutes to drive from my house to Rick's apartment. I arrived at Rick's apartment a little after 9:00 p.m.

"7. When I arrived, Rick and Joy were sitting on the sofa watching videos. I visited with them for about 10 minutes when I told Rick that I was feeling ill and I was going home. It was about 9:15 or 9:20 p.m. when I left.

"8. I contacted Rick's trial attorney, Mr. Hedric about testifying at trial.

"9. I was subpoenaed to testify at trial. Mr. Hedric met with me prior to the start of the trial.

"10. Mr. Hedric questioned me as to whether I would testify to being at Rick's apartment at 9:30 p.m. When I told him I could only testify to being at the apartment from shortly after nine to around 9:20 p.m., Mr. Hedric said he could not use my testimony."

The record shows that while appellant testified at trial that he and Shepherd were watching videos at the time of the incident, appellant did not testify about Maupin's dropping off some food at his apartment. Appellant also testified that it would take him at least twenty minutes to drive from his apartment to his ex-wife's house. The record also shows that while appellant was represented by new counsel on direct appeal, appellant did not raise the claim of ineffective assistance of counsel.

Plaintiff-appellee, the state of Ohio, filed a motion to dismiss on September 17, 1996. By entry filed December 11, 1996, the trial court dismissed appellant's petition for postconviction relief without holding an evidentiary hearing, ruling that *res judicata* barred appellant from raising the issue of ineffective assistance of counsel in his petition. Appellant timely filed this appeal and raises the following two assignments of error:

Assignment of Error No. 1:

"The trial court erred in applying the doctrine of *res judicata* to Mr. Smith's claim for relief, thus violating Mr. Smith's rights under the Fifth, Sixth, Ninth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 5, 9, 10, 16, and 20 of the Ohio Constitution."

Assignment of Error No. 2:

"The trial court erred when it denied Mr. Smith's petition for post–conviction relief without conducting an evidentiary hearing, thus violating Mr. Smith's rights under the Fifth, Sixth, Ninth, and Fourteenth Amendments of the United States Constitution, Article I, Sections 1, 2, 9, 10, 16 and 20 of the Ohio Constitution, and Ohio Revised Code Section 2953.21."

Because both assignments of error deal with the dismissal of appellant's petition for postconviction relief, they will be addressed together. The essence of appellant's argument under both assignments of error is that his right to due process of law was violated by the trial court's dismissal of his petition without a hearing. Appellant argues that his postconviction relief petition presented sufficient evidence outside the record to bar the application of *res judicata* and to justify a hearing.

R.C. 2953.21(C) states:

"The court shall consider a petition that is timely filed under division (A)(2) of this section even if a direct appeal of the judgment is pending. Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. * * * If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal."

■ It is well established that R.C. 2953.21 "does not expressly mandate a hearing for postconviction relief petition and, therefore, a hearing is not automatically required." *State v. Jackson* (1980), 64 Ohio St.2d 107, 110, 18 O.O.3d 348, 350, 413 N.E.2d 819, 822. Under R.C. 2953.21, a petition for postconviction relief is subject to dismissal without a hearing if the trial court finds that the petition advances a constitutional claim but that the issue was or could have been raised at trial or on direct appeal. *State v. Combs* (1994), 100 Ohio App.3d 90, 97, 652 N.E.2d 205, 209, citing *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104.

A petition for postconviction relief which alleges that the petitioner received ineffective assistance of counsel at trial is subject to dismissal on *res judicata* grounds where the petitioner had new counsel on direct appeal and where the ineffective assistance of counsel claim could otherwise have been raised on direct appeal without resort to evidence outside the record. *State v. Lentz* (1994), 70 Ohio St.3d 527, 529–530, 639 N.E.2d 784, 785–786, citing *State v. Cole* (1982), 2 Ohio St.3d 112, 2 OBR 661, 443 N.E.2d 169, syllabus; *State v. Viars* (Sept. 2, 1997), Butler App. No. CA97–01–012, unreported, 1997 WL 538971.

The presentation of competent, relevant, and material evidence outside the record may defeat the application of *res judicata*. *State v. Lawson* (1995), 103 Ohio App.3d 307, 315, 659 N.E.2d 362, 367–368, citing *State v. Smith* (1985), 17 Ohio St.3d 98, 17 OBR 219, 477 N.E.2d 1128. However, evidence outside the record must meet some threshold standard of cogency. *Lawson* at 315, 659 N.E.2d at 367. In addition, "[t]o overcome the *res judicata* bar, the evidence offered *dehors* the record must demonstrate that the petitioner could not have appealed the constitutional claim based upon information in the original [trial] record." *Id.; Combs,* 100 Ohio App.3d at 97, 652 N.E.2d at 209.

The record, as it existed at the time of appellant's direct appeal of his conviction, shows that on March 6, 1992, appellant's trial counsel filed a notice of alibi which listed Sargeant and Shepherd as alibi witnesses. During opening argument, appellant's trial counsel asserted the following:

"Rickey Smith has an alibi. Rickey Smith was with friends that night. The evidence will show that he is at home with Joy Shepherd. Now unfortunately Joy Shepherd is ill and is living in Florida now and can't be here. But there are other people that came in and was [*sic* ] with Rickey throughout the night. * * *

"* * * [Appellant and Shepherd] had a few beers at his house around 9:00, approximately—9:15. Tim Sargeant came in, his roommate. Rickey said, 'Hey, you want a beer?' 'No, I got a date. I'm gonna clean up, change clothes and go out on my date.' So he left.

"Shortly around that time Rickey's sister came, Phyllis Maupin, came again and dropped off some food. This is around, oh, 9:30—10:00, somewhere in that time period. She stayed for a couple minutes, left some food and then left.

"* * *

"But what we're saying is: Rickey Smith didn't do it.

"I think the evidence will show that [Susan Smith] had had some run ins with some other women before, based on the fact that she had been seeing some of their husbands.

"What we simply say is: Yes, she was beat up; but no, she wasn't beat up by Rickey Smith. And Rickey Smith can account for his time.

"I don't think there's any dispute that the alleged—or that the beating took place around 9:30, 9:45 according to hospital records and according to—as Mr. Hyde indicated in his opening statement. We can show that Rickey Smith was at his home at that time."

The record shows that while Sargeant testified at trial, neither Shepherd nor Maupin testified. Sargeant testified that on December 25, 1991, he arrived at his home shortly after 9:30 p.m. and that appellant was in the living room with a girlfriend watching television. Sargeant testified that appellant had no shirt and no shoes and that he did not appear out of breath, excited, or agitated.

Appellant testified that Shepherd was in Florida, that she went there for the wintertime, and that "something happened to her heart while she was down there." Appellant testified that he had people contact her. With regard to his ex-wife, appellant testified that she had filed charges against him "every December for the past three years."

During closing argument, the prosecuting attorney, Richard A. Hyde, made the following comments:

"MR. HYDE: The defendant's sister, Phyllis Maupin. Where was she? Remember she was supposed to bring food over to his house that night. Where is she?

"Where is Joy Shepherd? We got this excuse she's down in Florida, has heart trouble or a stroke or whatever it is. Well if that would be the case, they could have done what I did. I didn't have to have any witnesses here to testify to that.

"[CRAIG D. HEDRIC, appellant's trial counsel]: Objection, your honor. That's not the law. I couldn't submit a piece of paper and say this is her testimony. That's not the law.

"MR. HYDE: No, I'm talking medical records, your honor. I'm gonna make myself clear. I'm talking medical records, hospital records, pursuant to the statute.

"MR. HEDRIC: It's not the law, your honor.

"* * *

"MR. HYDE: And Joy Shepherd, his girlfriend who's supposed to be there with him throughout the night, she's nowhere to be found.

"Now, they could have had her here. He has the same subpoena power as the State of Ohio has.

"MR. HEDRIC: Objection, your honor. I cannot subpoena an out of state witness and he knows it. That's a mis-statement of the law. How do I get service on someone out of state? I have—the subpoenas from Butler County only go as far as the State line, your honor. It's a mis-statement of the law, a mis-characterization of the law.

"* * *

"MR. HYDE: But anyway, if Joy Shepherd's his girlfriend, this is an important day in this man's life. Don't you think she should have been here?

"Now don't you think defendant's sister, Phyllis Maupin, should have been here, besides just his roommate?"

■ After thoroughly reviewing the foregoing, we find that the issue of ineffective assistance of trial counsel could have been raised in appellant's direct appeal of his conviction based solely on the trial record. Ineffective assistance of counsel is established if appellant demonstrates that defense counsel substantially violated an essential duty to appellant and that the violation prejudiced the defense. *State v. Lytle* (1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 497–498, 358 N.E.2d 623, 626–627, vacated in part (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.

■ In the case at bar, trial counsel's ignorance of his statutory power to subpoena an out-of-state witness on behalf of his client, as set forth in R.C. 2939.25, 2939.26, and 2939.27, was clearly apparent from the record. In addition, "[w]here counsel is aware of potential alibi witnesses and fails to subpoena them to ensure their presence at trial, such failure constitutes a substantial violation of an essential duty owed to the accused." *Middletown v. Allen* (1989), 63 Ohio App.3d 443, 448, 579 N.E.2d 254, 257. We therefore find that the issue of ineffective assistance of counsel could have been addressed on direct appeal, could have fairly been determined without resort to evidence outside the record, and is thus barred from consideration on a postconviction relief petition by the doctrine of *res judicata.*

Appellant argues, however, that the affidavits attached to his postconviction relief petition were sufficient to warrant an evidentiary hearing under R.C. 2953.21(C) and that the trial court erroneously evaluated the credibility of the affiants in deciding not to grant an evidentiary hearing. In its December 11, 1996 entry, the trial court stated that while the affidavits of both Maupin and Shepherd were filed with appellant's petition, the affidavits were "not such as to require an evidentiary hearing," as Maupin's affidavit contained several internal inconsistencies and Shepherd's affidavit was inconsistent with the sworn testimony of appellant at trial.

The issue of whether a trial court may determine issues of credibility and weight based upon affidavits when it decides whether to grant an evidentiary hearing was thoroughly analyzed by the First District Court of Appeals in *State v. Moore* (1994), 99 Ohio App.3d 748, 651 N.E.2d 1319. In *Moore,* the court held that in light of "the current language of the postconviction statute, prior versions of the procedure, and Ohio Supreme Court interpretations of the statute * * * the legislature intended for the trial court to weigh issues of credibility without granting a hearing." *Id.* at 753, 651 N.E.2d at 1322. The First District then held that when weighing the credibility of postconviction relief affidavits, the trial court may consider the following factors: (1) whether the affidavits were prepared by a person other than the affiant, (2) whether the affiants are relatives of the petitioner, (3) whether the affidavits are identical and rely on hearsay, and (4) whether the judge reviewing the postconviction relief affidavits was the same judge who presided as the trial judge. *Id.* at 754, 651 N.E.2d at 1323.

In the case at bar, one of the affiants, Maupin, was a relative of appellant. The other affiant, Shepherd, while not a relative, was appellant's girlfriend at the time of the incident. In addition, the same judge who reviewed appellant's postconviction relief presided as the trial judge. As a result, "the judge was able to observe the defendant and his attorney and ascertain the credibility" of appellant at that time. *Id.* at 755, 651 N.E.2d at 1324.

In light of all of the foregoing, we find that the trial court did not err in evaluating the credibility of the affiants in deciding whether to grant an evidentiary hearing. We further find that the trial court did not err in dismissing appellant's postconviction relief petition without an evidentiary hearing. Appellant's first and second assignments of error are overruled.

*Judgment affirmed.*

POWELL, P.J., and WALSH, J., concur.