OPINION
Defendant-appellant, James R. Goff, appeals a decision of the Clinton County Court of Common Pleas dismissing his petition for postconviction relief ("PCR petition") brought pursuant to R.C. 2953.21. We affirm the decision of the trial court.
Appellant was indicted in 1995 for the capital murder of Myrtle Rutledge, an eighty-eight-year-old woman. On July 27, 1995, a jury found appellant guilty of two counts of aggravated murder, each with a death penalty specification, three counts of aggravated burglary, two counts of aggravated robbery, and one count of grand theft. Following a mitigation sentencing hearing, the trial court accepted the jury's recommendation and sentenced appellant to death on the aggravated murder charges. The trial court also sentenced appellant to a ten to twenty-five year term of imprisonment for aggravated burglary, a consecutive ten to twenty-five year term of imprisonment for aggravated robbery, and a consecutive two year term of imprisonment for grand theft.
Appellant appealed the judgment of conviction to this court, presenting twenty-four assignments of error for our review. On April 21, 1997, we affirmed appellant's conviction and death sentence. State v. Goff (Apr. 21, 1997), Clinton App. No. CA95-09-026, unreported. The Ohio Supreme Court subsequently affirmed appellant's conviction and death sentence.State v. Goff (1998), 82 Ohio St.3d 123. On July 6, 1998, appellant filed a motion for reconsideration in the Ohio Supreme Court. The supreme court denied appellant's motion on July 22, 1998. State v. Goff
(1998), 82 Ohio St.3d 1483. The United States Supreme Court denied appellant's petition for certiorari on June 24, 1999. Goff v. Ohio
(1999), ___ U.S. ___, 119 S.Ct. 2402.
Appellant filed his PCR petition on September 20, 1996. In his petition, appellant asserted the following three claims for relief: (1) denial of due process caused by the state's failure to properly disclose the consideration given to a state witness for his testimony, (2) ineffective assistance of counsel caused by trial counsel's failure to properly advise appellant on the state's offer of a sentence less than death, and (3) denial of due process because the jury instructions did not effectively inform the jury of its role in sentencing. On October 15, 1996, the state filed a motion for a ruling pursuant to R.C. 2953.21(C) and/ or motion for summary judgment.
By entry filed April 26, 2000, the trial court denied appellant's PCR petition without an evidentiary hearing. The trial court denied appellant's first claim for relief on the ground that there was no evidence the state witness was given any consideration for his testimony. The trial court also found that appellant's second and third claims for relief were barred by the doctrine of res judicata. This appeal[1] follows, in which appellant raises three assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S POST-CONVICTION PETITION WHERE HE PRESENTED SUFFICIENT OPERATIVE FACTS TO MERIT AN EVIDENTIARY HEARING AND DISCOVERY.
Appellant argues that the trial court erred by denying his PCR petition without an evidentiary hearing. Specifically, appellant argues that it was error for the trial court to summarily dismiss his three claims for relief where his PCR petition contained sufficient operative facts supporting his claims and where evidence outside the record precluded dismissal of his claims on the basis of res judicata. We address each of appellant's claims for relief separately.
A postconviction proceeding is not an appeal of a criminal conviction, but a collateral civil attack on a criminal judgment. State v. Steffen
(1994), 70 Ohio St.3d 399, 410. It is well-established that an evidentiary hearing is not automatically required for every petition seeking postconviction relief. Before granting a hearing, the trial court must determine, upon consideration of the petition, the supporting affidavits, all the files and records pertaining to the underlying proceedings, and any supporting evidence, whether the petitioner has "set forth sufficient operative facts to establish substantive grounds for relief." State v. Calhoun (1999), 86 Ohio St.3d 279, paragraph two of the syllabus; R.C. 2953.21(C). The petitioner bears the initial burden to provide evidence containing sufficient operative facts to demonstrate a cognizable claim of constitutional error. State v. Kapper (1983),5 Ohio St.3d 36, 37-38, certiorari denied (1983), 464 U.S. 856,104 S.Ct. 174. Moreover, before a hearing is warranted, the petitioner must demonstrate that the claimed "errors resulted in prejudice." Calhoun at 283. The decision to grant the petitioner an evidentiary hearing is left to the sound discretion of the trial court. Id. at 284.
A trial court may dismiss postconviction claims under the doctrine ofres judicata where the claims have already or could have been fully litigated by the petitioner while represented by counsel, either before the judgment of conviction or on direct appeal from that judgment. Statev. Perry (1967), 10 Ohio St.2d 175, paragraphs seven and nine of the syllabus. The presentation of competent, relevant, and material evidence outside the record may, however, defeat the application of res judicata.State v. Smith (1997), 125 Ohio App.3d 342, 348.
To so qualify, the evidence outside the record must meet some threshold standard of cogency. State v. Lawson (1995), 103 Ohio App.3d 307, 315. To overcome the res judicata bar, the evidence outside the record "must demonstrate that the petitioner could not have appealed the constitutional claim based upon information in the original [trial] record." Id. The evidence outside the record, therefore, must not be evidence which was in existence and available for use at the time of trial and which could and should have been submitted at trial if the defendant wished to use it. State v. Slagle (Aug. 10, 2000), Cuyahoga App. No. 76834, 2000 Ohio App. LEXIS 3641, at *10-11, unreported, citingState v. Coleman (Mar. 17, 1993), Hamilton App. No. C-900811, unreported. In addition, if the evidence outside the record is "marginally significant and does not advance the petitioner's claim beyond a mere hypothesis and a desire for further discovery," resjudicata still applies to the claim. Lawson, 103 Ohio App.3d at 315.
In his first claim for relief, appellant asserts he was denied due process because the state failed to properly disclose the consideration given to a state key witness, Keith Lamar Jones, for his testimony at appellant's trial. Specifically, appellant contends that the state's failure to disclose the plea agreement entered in federal court by Jones and his subsequent reduced sentence in exchange for his testimony violated appellant's constitutional rights under Brady v. Maryland
(1963), 373 U.S. 83, 83 S.Ct. 1194, by failing to disclose crucial and material exculpatory evidence. Appellant also contends that even if the state did not know about the plea agreement, it should have known about it because of the state's "duty to learn of any impeachment or exculpatory evidence known to others acting on the government's behalf."
The trial court denied appellant's first claim for relief as follows:
 In support of this claim [appellant] presented exhibits * * * [which] included correspondence between Mr. Jones [sic] attorney and the Federal Prosecutor, transcript of Jones' plea and sentencing, and various court entries * * *.
 In response, the State submitted two affidavits one from Mr. Peelle, the Clinton County Prosecutor, and one from Mr. Woodman, attorney for Mr. Jones. * * * Mr. Peelle * * * states that on September 15, 1995 he received a letter from Mr. Jones [sic] attorney requesting Mr. Peelle inform the federal court of Mr. Jones [sic] assistance in the Goff trial, which Mr. Peelle did by letter dated September 20, 1995. Neither letter makes any reference to any prior arrangements. Mr. Peelle * * * also indicates that this is the first and only request which he received. He also indicates that no consideration was offered or given in exchange for Mr. Jones [sic] testimony. The affidavit of * * * [Mr.] Jones [sic] attorney bears this out. This all took place after Mr. Jones testified.
 * * * Based upon a review of the record, * * * the court finds that there is no evidence of any consideration to be given Mr. Jones in exchange for his testimony. The affidavits and exhibits reflect that the state did not receive any requests until some 51 days after Jones testified. There is no evidence of any prior promises or agreements. Mere speculation and unsubstantiated allegations do not entitle [appellant] to relief. (Emphasis sic.)
In Brady, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87, 83 S.Ct. at 1196-1197. In United States v.Bagley (1985), 473 U.S. 667, 105 S.Ct. 3375, the Supreme Court defined "material evidence" as requiring "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. at 682,105 S.Ct. at 3383.
In Kyles v. Whitley (1995), 514 U.S. 419, 115 S.Ct. 1555, the Supreme Court addressed the issue again and held that
 Although the constitutional duty [of the prosecution to disclose evidence favorable to a defendant] is triggered by the potential impact of favorable but undisclosed evidence, a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. * * * Bagley's touchstone of materiality is a "reasonable probability" of a different result * * *. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial." (Citations omitted.)
 * * * One does not show a Brady violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.
Id. at 434-435, 115 S.Ct. at 1565-1566.
The test under Brady and its progeny is stringent. State v. Jackson
(1991), 57 Ohio St.3d 29, 33. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish `materiality' in the constitutional sense." United States v. Agurs (1976), 427 U.S. 97,109-110, 96 S.Ct. 2392, 2400. A reversal is not required when a mere "combing of the prosecutor's files after the trial disclosed evidence possibly useful to the defense but not likely to have changed the verdict." Giglio v. United States (1972), 405 U.S. 150, 154,92 S.Ct. 763, 766. "[T]o reiterate a critical point, the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." Agurs at 108, 96 S.Ct. at 2400.
A review of the pertinent facts regarding Jones' plea agreement is necessary. In January 1995, Jones wrote a letter to the prosecutor's office regarding appellant's murder of Myrtle Rutledge. The state first learned of Jones' pending federal charges on June 8, 1995 when it unsuccessfully tried to transport Jones, then in jail, to testify at appellant's trial. Due to appellant's indecision about whether to proceed with a jury or a three-judge panel, appellant's trial did not start until July 17, 1995. Jones testified on July 26, 1995.
Unbeknownst to either the state or appellant, on June 15, 1995, Jones had signed a written plea agreement with the United States attorney which included the following paragraph:
 Finally, the United States Attorney for the Southern District of Ohio agrees that if [Jones] provides substantial assistance in the investigation or prosecution of others who have committed criminal offenses, the United States Attorney may move the Court * * * for an appropriate departure from the otherwise applicable guideline range for [Jones'] sentence and will in connection therewith make known to the Court the nature and extent of [Jones'] assistance. [Jones] understands that whether such motion should be made lies within the discretion of the United States Attorney and that whether and to what extent such motion should be granted are solely matters for determination by the Court.
On July 10, 1995, Jones entered a guilty plea to one count of false use of a social security number in violation of Section 408(a)(7)(B), Title 42, U.S. Code.
On cross-examination during his testimony at appellant's trial, when asked whether he was under indictment or investigation in federal court, Jones replied that he was for misuse of a social security number. Appellant's trial counsel further delved into the pending federal charge. Appellant's trial counsel elicited not only that Jones had been indicted under the federal charge, but that he had also pled guilty to the federal charge. Jones admitted that in addition to the time he had already served, he was "looking at more time[.]" Appellant was subsequently convicted in July and sentenced in August 1995.
On September 7, 1995, the United States attorney filed a motion for substantial assistance asking the federal court to consider Jones' "substantial assistance * * * in a case prosecuted by local authorities" in determining an appropriate departure from the applicable sentencing guidelines. On September 15, 1995, the state received a letter from Jones' attorney seeking a letter on behalf of Jones regarding his assistance in appellant's trial. On September 20, 1995, the state addressed a letter to the federal court which stated that Jones' "testimony was critical in the successful prosecution of [appellant.] * * * Mr. Jones voluntarily contacted our office and provided us with information and testimony that was extremely beneficial in the preparation of our case."
During Jones' October 31, 1995 sentencing hearing, the United States attorney stated that Jones was the state's key witness in appellant's trial and that his testimony was critical. Jones' attorney, in turn, stated that Jones had been very cooperative not only in appellant's trial, but also with "agents of the United States government from divisions of the IRS, Health and Human Services and others[.]" That same day, Jones was sentenced to a twenty-four month term of imprisonment, instead of a possible maximum sixty-month term.
Upon a thorough review of the record, we find that the trial court properly dismissed appellant's first claim for relief. At the outset, we find that the record supports the trial court's finding that "there is no evidence of any consideration to be given Mr. Jones in exchange for his testimony. The affidavits and exhibits reflect that the state did not receive any requests until some 51 days after Jones testified. There is no evidence of any prior promises or agreements." While the record indicates when the state became aware of Jones' then-pending federal charge, it is not clear when, if ever before Jones' testimony, the state learned about Jones' plea agreement and/or guilty plea.
However, even assuming that the state failed to disclose Jones' plea agreement to appellant, we find, based upon the totality of the circumstances, that there is no "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, 473 U.S. at 682, 105 S.Ct. at 3383. First, Jones' testimony regarding appellant's murder of Myrtle Rutledge was substantially confirmed by the testimony of Timothy Schaffer, a friend of appellant. Other parts of Jones' testimony were also confirmed by another witness. See United States v. Palmer (C.A.4, 1996), 96 F.3d 1440.
Moreover, Jones' credibility had been seriously questioned on cross-examination after he admitted he already had a number of convictions, including for insurance fraud, theft by deception, and receiving stolen property. On cross-examination, Jones also admitted to "a long history of dishonest behavior," lying under oath on two separate occasions, writing "bogus" contracts for a cellular phone company, and "face-to-face lying to people[.]" "[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material." Byrd v. Collins
(C.A.6, 2000), 209 F.3d 486, 518. We cannot say that evidence of Jones' plea agreement "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles,514 U.S. at 435, 115 S.Ct. 1555. The trial court therefore properly denied appellant's first claim for relief.
In his second claim for relief, appellant asserts that his trial counsel were ineffective under the standards of Strickland v. Washington
(1986), 466 U.S. 668, 104 S.Ct. 2052, for failing to seek the assistance of experienced capital defense attorneys when advising appellant on the state's offer of a sentence less than death. Appellant asserts that had trial counsel "made use of the services of someone with experience working with death row inmates, [his] decision on the plea may well have been different."
In support of his claim, appellant attached to his petition the affidavit of Richard Vickers, an attorney in the Death Penalty Unit of the Ohio Public Defender's Office. Vickers has counseled several "capital defendants regarding the benefits of accepting plea agreements rather than risking trial and a possible death sentence." Vickers' affidavit outlined what trial counsel should do and tell a capital defendant regarding plea bargaining in a death penalty case. Although Vickers' affidavit concluded that the vast majority of capital defendants are denied effective assistance of counsel "if their counsel does not do everything within his ability to resolve the case in a plea less than death[,]" it was not critical of appellant's trial counsel's performance. Nor did it suggest or conclude that trial counsel breached an essential duty to appellant which deprived appellant of substantial justice or a fair trial.
The trial court held that the claim was barred by res judicata as it could have been raised on direct appeal. The trial court also found that "the record reflects that [appellant's] trial counsel presented the plea to [appellant] and explained it to him thoroughly, whereupon [appellant] voluntarily rejected the offer and chose not to accept the plea."
In State v. Cole (1982), 2 Ohio St.3d 112, the Ohio Supreme Court held that:
 Where ineffective assistance of counsel is alleged in a petition for postconviction relief, the defendant, in order to secure a hearing on his petition, must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the defendant. * * * Generally, the introduction in an R.C. 2953.21
petition of evidence [outside] the record of ineffective assistance of counsel is sufficient, if not to mandate a hearing, at least to avoid dismissal on the basis of res judicata. (Citations omitted.)
Id. at 114. On the issue of counsel's ineffectiveness, the defendant has the burden of proof, since in Ohio a properly licensed attorney is presumably competent. See Vaughn v. Maxwell (1965), 2 Ohio St.2d 299.
Appellant asserts that Vickers' affidavit is competent evidence outside the record sufficient to preclude the application of res judicata on his claim of ineffective assistance of counsel. We note at the outset that some Ohio appellate courts have held that affidavits of capital defense attorneys or experts reviewing ex post facto the record and/or the performance of trial counsel cannot be considered as they are not evidence outside the record. See State v. Landrum (Jan. 11, 1999), Ross App. No. 98 CA 2401, unreported; State v. Zuern (Dec. 4, 1991), Hamilton App. Nos. C-900481 and C-910229, unreported. By contrast, this court has considered such affidavits as evidence to support a claim of ineffective assistance of counsel in a postconviction relief proceeding. State v.Reeder (Nov. 13, 2000), Clinton App. No. CA00-03-010, unreported. Although this court did not specifically find, as it was not argued, that the affidavit was competent evidence outside the record, it did find that the affidavit along with three other documents presented sufficient operative facts to require an evidentiary hearing. Id. at 7.
Considering Vickers' affidavit, we find that appellant's claim nevertheless fails. Appellant has failed to demonstrate that his trial counsel breached an essential duty owed to appellant. We reiterate that while Vickers' affidavit outlined what should be the best practice when plea bargaining in a death penalty case, it did not state how trial counsel's performance was ineffective. Nor did it suggest or conclude that trial counsel breached an essential duty to appellant which deprived appellant of substantial justice or a fair trial. Appellant has also failed to demonstrate any prejudicial factors which would entitle him to a hearing. His assertion that "[his] decision on the plea may well have been different" is a self-serving, broad, conclusory assertion which does not warrant an evidentiary hearing. State v. Jackson (1980),64 Ohio St.2d 107, 111. In hindsight, appellant would undoubtedly do things differently if he could try his case again. However, hindsight is not a recognized legal principle. The trial court properly denied appellant's second claim for relief.
In his third claim for relief, appellant asserts he was denied due process because the jury instructions failed to inform the jury of its role in sentencing. Specifically, appellant argues that "[t]he language used [in the jury instructions] created significant roadblocks to understanding the law by the jurors[,]" and that jury instructions on the death penalty are "typically misunderstood" by jurors. In support of his claim, appellant attached to his petition the affidavit of Michael Geis, Emeritus Professor of Linguistics at the Ohio State University. In his affidavit, Professor Geis criticized an analogy made by the prosecutor during trial as well as several of the trial court's jury instructions which he described as "ambiguous and unintelligible." The trial court held that the claim was barred by res judicata as it could have been raised on direct appeal. We agree with the trial court.
With regard to Professor Geis' affidavit, we find that it does not constitute evidence outside the record as the record speaks for itself on the issue. See State v. Williams (June 22, 1998), Butler App. No. CA97-08-162, unreported. We also note that similar affidavits have been rejected on the ground that a professor of linguistic has no firsthand knowledge of the jurors' subjective considerations during the sentencing deliberations. See State v. Waddy (June 10, 1997), Franklin App. No. 96APA07-863, unreported.
Appellant's evidence fails to demonstrate why his claim regarding allegedly confusing jury instructions could not have been raised at trial or on direct appeal. We note that on direct appeal, appellant raised twenty-four assignments of error, fourteen of which related to jury instructions. Because appellant's third claim for relief should have been raised on direct appeal, the trial court properly dismissed it on the basis of res judicata.
In light of all of the foregoing, we therefore find that the trial court did not err by denying appellant's PCR petition without an evidentiary hearing. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED AND APPELLANT'S RIGHT TO DUE PROCESS WAS VIOLATED WHEN THE TRIAL COURT GRANTED APPELLEE'S MOTION FOR SUMMARY JUDGMENT WITHOUT GIVING APPELLANT AN OPPORTUNITY TO RESPOND TO THE MOTION THROUGH DEPOSITIONS AS PROVIDED FOR IN OHIO R. CIV. P. 56 [sic][.]
Following the state's filing of its motion for ruling and/or motion for summary judgment, the trial court, by judgment entry filed October 25, 1996, ordered appellant to respond to the state's motion by November 13, 1996. Appellant never filed a response to the state's motion for summary judgment. Instead, on November 13, 1996, appellant filed a motion to take depositions of Jones, Jones' attorney, and the prosecutor. The trial court never ruled on appellant's motion.[2] Thereafter, neither side presented any additional affidavits or motions to the court. On April 26, 2000, the trial court dismissed appellant's PCR petition without an evidentiary hearing. Appellant contends that the trial court's "refusal" to rule on his motion to take depositions and its summary dismissal of his PCR petition denied him the opportunity to adequately and meaningfully respond to the state's motion for summary judgment. We disagree.
Civ.R. 56 governs summary judgment and provides in relevant part that:
 (E) * * * The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
 (F) * * * Should it appear from the affidavits of a party opposing the motion for summary judgment that he cannot for sufficient reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.
Civ.R. 56(E) clearly requires the party opposing a motion for summary judgment to respond to the motion. Although ordered by the trial court to respond to the state's motion for summary judgment by a certain date, appellant did not respond to the motion but chose instead to file a motion to take depositions. The record clearly shows that appellant never responded to the state's motion, by affidavit or otherwise, in violation of Civ.R. 56(E).
Appellant now claims that by not being allowed to take the depositions of three individuals, he was denied the opportunity to adequately and meaningfully respond to the state's motion for summary judgment. Had appellant responded to the state's motion for summary judgment as required under Civ.R. 56(E), he could have availed himself of Civ.R. 56(F). He did not and instead sat on his hands until the trial court denied his PCR petition in April 2000, three years and five months later. Having failed to comply with Civ.R. 56, appellant should not now be heard to cry foul regarding his inability to take depositions and respond to the state's motion for summary judgment. Appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 OHIO POST-CONVICTION PROCEDURES DO NOT AFFORD AN ADEQUATE CORRECTIVE PROCESS NOR DO THEY COMPLY WITH DUE PROCESS OR EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT.
Appellant argues that R.C. 2953.21 and Ohio's postconviction proceedings are unconstitutional because they fail to afford an adequate corrective process and do not comply with due process and equal protection guarantees. Specifically, appellant challenges the lack of access to traditional discovery mechanisms and cites several cases from the United States Sixth District Court of Appeals to support his claim. See Keener v. Ridenour (C.A.6, 1979), 594 F.2d 581; Allen v. Perini
(C.A.6, 1970), 424 F.2d 134; Coley v. Alvis (C.A.6, 1967), 381 F.2d 870.
Our response to appellant's argument is twofold. First, a review of the record reveals that appellant failed to raise this issue at the trial court level. It is well-established that failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at that time, constitutes a waiver of such issue, and therefore, need not be heard for the first time on appeal. See State v. Awan (1986), 22 Ohio St.3d 120. Because appellant did not raise this issue below, he waived it on appeal.
Second, R.C. 2953.21 has been held to be constitutional. See State v.Sklenar (1991), 71 Ohio App.3d 444. While appellant is correct that the United States Sixth District Court of Appeals questioned the adequacy of Ohio's postconviction proceedings and the Ohio Supreme Court's narrow interpretation of R.C. 2953.21 in State v. Perry (1967), 10 Ohio St.2d 175, "[t]he Sixth Circuit Court of Appeals' dissatisfaction with Ohio's postconviction relief process and the Perry decision does not require us to hold the postconviction relief process invalid. Perry remains good law in this State." State v. Lewis (Dec. 3, 1998), Cuyahoga App. No. 73736, 1998 Ohio App. LEXIS 5777, at *11, unreported. Appellant's third assignment of error is overruled.
Judgment affirmed.
 _________ VALEN, J.
POWELL, P.J., and YOUNG, J., concur.
[1] 1. On May 10, 2000, appellant filed a motion for relief from judgment pursuant to Civ.R. 60(B). To preserve his right to appeal the dismissal of his PCR petition, appellant filed a notice of appeal from the trial court's denial of his PCR petition on May 19, 2000. By entry filed September 13, 2000, the trial court denied appellant's Civ.R. 60(B) motion. On October 12, 2000, appellant appealed the denial of his Civ.R. 60(B) motion. Appellant subsequently sought to consolidate his two appeals. By entry filed October 31, 2000, this court denied appellant's motion to consolidate both appeals. The appeal before us therefore only concerns the trial court's denial of appellant's PCR petition.
[2] Because the trial court failed to rule on appellant's motion to take depositions, it is presumed that it overruled the motion. SeeTakacs v. Baldwin (1995), 106 Ohio App.3d 196.