{¶ 1} This is a timely appeal from an order entered by the Mahoning County Court of Common Pleas dismissing Appellant's petition for postconviction relief. Based on the record before us, we hereby affirm the judgment of the trial court.
 {¶ 2} This case stems from the September 17, 1999, beating, kidnapping and murder of 16-year old John Allen. Although Allen's body was discovered in Youngstown's Lincoln Park, the attack that led to his death began in an apartment building at 1515 Market Street. Kevin Green ("Appellant") frequented and sold drugs at that location. (Tr., p. 748.)
 {¶ 3} At some point during that evening, Appellant arrived at the apartment building expecting to meet a girlfriend. When he arrived he was greeted by several acquaintances, but she was not among them. One of those acquaintances was William Robinson. Robinson advised Appellant that John Allen, who was also in the building that night, was planning to rob him. According to the prosecution, a confrontation ensued during which Appellant, along with Robinson, Jeron Hunter and Lamar Logan, began beating Allen, bound him with a telephone cord, shoved a sock in his mouth, stuffed him into the trunk of a car, and transported him to Lincoln Park. They then removed the young man from the vehicle and shot him six times in the back of the head. (Tr., pp. 356, 369, 604.)
 {¶ 4} A grand jury subsequently indicted Appellant on aggravated murder and kidnapping charges. At trial, the prosecution relied largely on the testimony of William Robinson and the crime's other participants. Appellant maintained his innocence, arguing that he did not participate in Allen's beating, and even attempted to stop it, at one point physically restraining Robinson in an unsuccessful effort to prevent him from beating Allen further. According to Appellant, when Robinson told him about Allen's intentions, Appellant approached Allen and the two calmly discussed the situation. (Tr., p. 757.) Appellant satisfied himself that Allen was not planning to rob him, and everything seemed fine until Allen saw Robinson. Evidently enraged that Robinson snitched on him to Appellant, Allen physically confronted Robinson. (Tr., p. 761.)
 {¶ 5} When it appeared that Allen, who, at 5' 2" and 125 lbs., was unlikely to prevail, Appellant claims he tried to stop the fight. Robinson pulled out a gun and Appellant withdrew. (Tr., p. 765.) Robinson continued to beat Allen and was joined by Logan and Hunter. Eventually, Appellant gave up and decided to head home. (Tr., pp. 768-771.)
 {¶ 6} A jogger discovered Allen's remains the next morning. (Tr., p. 289.) When Appellant learned that Allen died, he left town, because, according to Appellant, "snitches get stitches." (Tr., p. 800.) Nevertheless, when he learned that a warrant had issued for his arrest, he returned to the area and surrendered to police. The jury acquitted Appellant on the aggravated murder charge but found him guilty of kidnapping and complicity in Allen's murder.
 {¶ 7} On February 27, 2001, the trial court sentenced Appellant to an aggregate term of thirty years imprisonment. In an Opinion released on June 13, 2003, this Court affirmed that judgment in all respects.
 {¶ 8} On August 30, 2001, Appellant, acting pro se, filed a petition to vacate or set aside his sentence, seeking postconviction relief under R.C. 2953.21. In that pleading, Appellant advanced two claims under which he detailed a laundry list of generalized complaints directed at his trial counsel's allegedly inadequate performance. In support of the various allegations leveled in the petition, Appellant appended a newspaper article reflecting the fact that the other three co-offenders in the case all received reduced sentences as a result of their cooperation in the case.
 {¶ 9} Also attached to the petition were four undated letters or articles signed by, "A CONCERNED CITIZEN," or an organization calling itself, "P.A.U.L.S. (People Against Unfair Legal System.)" The letters contain the following headlines: "IS THIS JUSTICE OR JUST MISSED?" "Railroaded," "SPEAKING OF INEFFECTIVE COUNSEL," and "Bearing False Witness." All four missives reflect dissatisfaction with the plight of young black men, generally, and the fairness of Appellant's trial, specifically. The following passage from the first letter is demonstrative:
 {¶ 10} "WE THE LAW ABIDING CITIZENS WANT JUSTICE! WE ARE TIRED OF VISITING FUNERAL HOMES TO SEE YOUNG BLACK MEN INSTEAD OF ATTENDING A HIGH SCHOOL OR COLLEGE GRADUATION EXERCISE! IF OUR SYSTEM OF JUSTICE IS TO WORK FOR EVERYBODY IT MUST BE CONSISTENT AND FAIR! WE MUST NOT TURN OUR HEADS AT ONE TIME AND THEN GO OVERBOARD THE NEXT TIME.
 {¶ 11} "* * *
 {¶ 12} "I AM ASKING YOU THE PUBLIC TO WRITE LETTERS TO JUDGE DURKIN WHO RULED IN THIS CASE, THE VINDICATOR, THE PROSECUTOR, THE BUCKEYE REVIEW, AND YES THE STATE SUPREME COURT SOMETHING IS WRONG WITH THIS CASE, CASE #99CR893C. SINCE WHEN DID THE VICTIM GET LIFE? THERE WAS NO GUN FOUND. NO CAR THAT WAS ALLEGEDLY USED IN THIS CRIME."
 {¶ 13} The petition also included an affidavit signed by Frances Sutton, a cousin of Appellant. The record reflects Mrs. Sutton resided with Appellant at the time of the incident. In her affidavit, Ms. Sutton states that she,
 {¶ 14} "[V]olunteered to witness to the whereabouts of Mr. Kevin L. Green during the September 18, 1999 homicide of a John F. Allen of 43 E. Earle, Youngstown, Ohio. Although my name was submitted to the attorney for Mr. Kevin L. Green. * * * I was never contacted nor was I summoned to witness as I had requested on Mr. Green's behalf. * * * A year went past and I relocated, feeling that Mr. Green's attorney did not need me after my numerous attempts. If attorney Juhasz would have contacted me at all, I believe it would have made a difference in the outcome of Mr. Green's trial[.]"
 {¶ 15} On September 12, 2001, the State of Ohio ("Appellee") filed a motion for summary judgment, arguing that Appellant's unsupported allegations did not entitle him to postconviction relief and that his claims were otherwise barred under the doctrine of res judicata. The trial court agreed and on January 3, 2002, entered judgment in favor of Appellee. This pro se appeal followed.
 {¶ 16} Appellant's only assignment of error asserts:
 {¶ 17} "Trial court (sic) failure to interview or subpoena witnesses, present video tape statement, denied Appellant of `effective' assistance, which prejudiced the Appellant of his 5th, 6th, and 14th amendment (sic) constitutional rights."
 {¶ 18} Appellant argues that he was entitled to an evidentiary hearing on his claims attacking trial counsel's performance. In his brief, Appellant maintains that counsel failed to introduce key defense evidence. Specifically, Appellant argues that trial counsel was ineffective because he failed to call Frances Sutton as an alibi witness; failed to refresh the memory of state witness Clarence Bowen with his videotaped statement to police that Jeron Hunter and William Robinson had carried the victim from the apartment building to the vehicle on the night of his murder; and failed to introduce an affidavit from Jeron Hunter confirming that Hunter and Robinson put Allen in the trunk.
 {¶ 19} Appellee responds that the trial court properly dismissed Appellant's unsupported petition because it was insufficient as a matter of law to entitle him to a hearing.
 {¶ 20} Pursuant to R.C. 2953.21, any person convicted of a criminal offense claiming a denial or infringement upon his rights under the state or federal constitutions of sufficient magnitude to render the judgment void or voidable may petition for relief in the court that imposed sentence. R.C. 2953.21(A)(1). A postconviction proceeding is not an appeal of a criminal conviction, however. It is a civil action that seeks to collaterally attack a criminal judgment. State v. Kinley
(1999), 136 Ohio App.3d 1, 7, 735 N.E.2d 921.
 {¶ 21} R.C. 2953.21(C) allows for the summary dismissal of petitions seeking postconviction relief without a hearing if the defendant fails to submit documentary or other evidentiary support, or if the claims are barred as res judicata. State v. Calhoun (1999),86 Ohio St.3d 279, 282, 714 N.E.2d 905. Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising or resurrecting issues in collateral review that could have been raised and fully litigated on direct appeal. State v. Reynolds (1997), 79 Ohio St.3d 158, 161,679 N.E.2d 1131; State v. Perry (1967), 10 Ohio St.2d 175, O.O.2d 189,226 N.E.2d 104, paragraph nine of the syllabus. Where, however, an alleged constitutional error is supported by evidence that is de hors the record, res judicata will not bar the claim because it would have been impossible to fully litigate the claim on direct appeal. State v. Smith
(1985), 125 Ohio App.3d 342, 348, 708 N.E.2d 739. The aforementioned exception to the res judicata rule does not apply in the instant case.
 {¶ 22} There are well-established standards for review of a petition for postconviction relief. As noted in State v. Davis (1999),133 Ohio App.3d 511, 515, 728 N.E.2d 1111:
 {¶ 23} "It is well settled that a petition for postconviction relief brought pursuant to R.C. 2953.21 will be granted only where the denial or infringement of constitutional rights is so substantial as to render the judgment void or voidable. State v. Walden (1984),19 Ohio App.3d 141, 146, 19 OBR 230, 235-236, 483 N.E.2d 859, 865-866. * * * Absent a showing of an abuse of discretion, a reviewing court will not overrule a trial court's findings on a petition for postconviction relief that are supported by competent and credible evidence. State v.Mitchell (1988), 53 Ohio App.3d 117, 119, 559 N.E.2d 1370. `Abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.State v. Adams (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172-173,404 N.E.2d 144, 148-149; State v. Keenan (1998), 81 Ohio St.3d 133, 137,689 N.E.2d 929, 937."
 {¶ 24} A criminal defendant seeking to challenge his conviction through a petition for postconviction relief is not automatically entitled to a hearing to review the petition. State v. Cole (1982),2 Ohio St.3d 112, 113, 443 N.E.2d 169. "Before granting an evidentiary hearing on the petition, the trial court shall determine whether there are substantive grounds for relief (R.C. 2953.21[C]), i.e., whether there are grounds to believe that `there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States.'" State v.Calhoun (1999), 86 Ohio St.3d 279, 282-83, 714 N.E.2d 905. A hearing need not be scheduled unless the petitioner submits evidentiary documents containing sufficient operative facts demonstrating the merit of his claims. Id.
 {¶ 25} Evidence attached to a petition for postconviction relief must meet, "some threshold standard of cogency." State v. Lawson (1995),103 Ohio App.3d 307, 315, 659 N.E.2d 362. This standard is not met by evidence that is, "only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery." Id. Additionally, "where a petitioner relies upon affidavit testimony as the basis of entitlement to postconviction relief, and the information in the affidavit, even if true, does not rise to the level of demonstrating a constitutional violation, then the actual truth or falsity of the affidavit is inconsequential." State v. Calhoun (1999),86 Ohio St.3d 279, 284, 714 N.E.2d 905.
 {¶ 26} If affidavits are filed in support of the petition, the trial court may, "judge their credibility in determining whether to accept the affidavits as true statements of fact." Id. at 284,714 N.E.2d 905. In assessing the credibility of affidavit testimony, the trial court should give consideration to, "all relevant factors." Id. Among the factors are: (1) whether the judge reviewing the postconviction relief petition also presided at trial; (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person; (3) whether the affidavits contain or rely on hearsay; (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts; and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witnesses, or to be internally inconsistent, thereby weakening the credibility of that testimony. Id. Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility. Id. at 285, 714 N.E.2d 905.
 {¶ 27} Appellate review of a trial court's disposition of a petition for postconviction relief is a hybrid, presenting mixed questions of law and fact. State v. Smith (Sept. 24, 1999), 11th Dist. No. 98-T-0097; State v. Akers (Sept. 9, 1999), 4th Dist. No. 98 CA 33. The trial court's factual findings will not be reversed unless they are against the manifest weight of the evidence. Judgments will not be reversed as being against the manifest weight of the evidence if they are supported by some competent, credible evidence. Gerijo, Inc. v.Fairfield (1994), 70 Ohio St.3d 223, 226, 638 N.E.2d 533; C.E. MorrisCo. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. Upon accepting such findings of fact, an appellate court then independently determines the propriety of the trial court's conclusions of law.
 {¶ 28} Appellant contends that his trial counsel was ineffective and thereby deprived him of his right to counsel under theSixth Amendment of the United States Constitution. To prevail on a claim of ineffective assistance of trial counsel, Appellant needs to demonstrate that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon to have produced a just result. Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674. Accordingly, an ineffective assistance of counsel claim turns on two factors. The first inquiry is whether counsel's performance fell below an objective standard of reasonableness. Id. Only if the court concludes that counsel's performance was substandard does it reach the second part of the analysis, which focuses on whether the defendant suffered prejudice as a result. Id.; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 29} In his petition, Appellant asserted that his trial counsel was ineffective due to the following claimed lapses: 1) trial counsel was biased and prejudiced against him; 2) trial counsel failed to object to improper testimony; 3) trial counsel failed to call character witnesses; 4) trial counsel failed to object to the selection of an all white jury; 5) trial counsel failed to underscore the fact that police had not located the vehicle used to transport the victim; 6) counsel forced Appellant to testify falsely concerning his ownership of the vehicle; 7) trial counsel failed to visit him prior to the trial; and 8) trial counsel failed to call witnesses and introduce evidence concerning Appellant's whereabouts at the time the victim was killed.
 {¶ 30} Appellant offers nothing to demonstrate that counsel harbored bias or prejudice against him, and, if he did, how such bias or prejudice managed to manifest itself. While the record does indicate that counsel failed to call character witnesses on Appellant's behalf, Appellant has neither identified such character witnesses, nor has he described the substance and relevance of their testimony.
 {¶ 31} Absent a demonstration of prejudice, trial counsel's failure to visit a client pending trial does not render his representation ineffective under the Constitution. See Cleveland v.Ballard (Oct. 10, 1996), 8th Dist. No. 70381. Further, Appellant's allegation that counsel forced him to lie under false pretenses, presumably about his ownership of a vehicle possibly involved in the crime, is too vague to analyze, since the petition does not identify the testimony he now purports was false.
 {¶ 32} Appellant also fails to substantiate his claim that trial counsel failed to present evidence in support of an alibi defense. It is true that counsel's failure to investigate and present alibi testimony may render his performance ineffective. See e.g., State v. Stevens (Dec. 21, 1999), 5th Dist. No. CA9902; and State v. Beavers (Dec. 31, 1997), 2nd Dist. No. 16362. Certainly, a credible alibi witness would have helped to corroborate Appellant's claim that he left the Market Street apartment when things became too violent. But Appellant has failed to demonstrate that there was such a witness. We note that Frances Sutton's affidavit, while suggesting the potential existence of an alibi, falls substantially short of actually providing one. Even her insistence that such testimony "would have made a difference" at trial, without an indication of what the testimony would be, is not enough to factually support an alibi.
 {¶ 33} The balance of Appellant's contentions (counsel's failure to make certain arguments, Appellant's objections to the racial composition of the jury, and his disagreement in the introduction of certain testimony) are issues that could have been raised on direct appeal but were not. State v. Green, 7th Dist. No. 01 CA 54,2003-Ohio-3074. These matters are barred as a matter of res judicata since they could have been raised and litigated on direct appeal. Perry, supra, 10 Ohio St.2d at 180, 226 N.E.2d 104.
 {¶ 34} Other than highlighting the argument that his counsel failed to call Frances Sutton as an alibi witness, Appellant's brief avoids the contentions set forth in his petition for postconviction relief. Instead, his brief on appeal introduces two additional bases for postconviction relief. First, Appellant argues that counsel should have introduced a videotape of a statement that witness Clarence Bowen gave to police. Second, Appellant maintains that trial counsel should have introduced an affidavit from Jeron Hunter ostensibly exonerating Appellant of the crime. Again, the record contains no factual support for either claim. In any event, neither contention is properly raised in the context of the instant appeal.
 {¶ 35} Evidently, on August 26, 2002, while the instant appeal was pending, Appellant filed a successor petition that may have included the additional allegations he now argues in his brief. The trial court dismissed the successor petition on September 12, 2002. Appellant neglected to appeal that dismissal.
 {¶ 36} Nevertheless, on November 1, 2002, in an apparent attempt to consolidate the two petitions for purposes of review in this Court, Appellant filed a Motion to File Delayed Post-Conviction. In that document, Appellant complained about delays in the preparation of his transcript and a change of counsel on direct appeal, and asked this Court to, "exclude prior petition filed August 30, 2001, [the one that is the subject of this Appeal] * * * and or allow the defendant to file a new or delayed-post conviction pursuant to R.C. § 2953.21." On December 3, 2002, this Court denied Appellant's motion. Under the circumstances, and to the extent that Appellant here sets forth claims or allegations that were excluded from the petition that is the subject of the current appeal, this Court cannot consider any additional allegations.
 {¶ 37} State and federal postconviction review has evolved into a procedural quagmire that is admittedly difficult to navigate. It is hardly surprising then, that an indigent prisoner, acting pro se, might stumble in an attempt to plead potentially meritorious collateral claims without even rudimentary legal assistance or oversight. Nevertheless, state postconviction review is not a constitutional right. State v. Steffen
(1994), 70 Ohio St.3d 399, 410, 639 N.E.2d 67. Appellant does not have the right to the assistance of counsel in postconviction proceedings unless the trial court determines that the petition merits a hearing.State v. Crowder (1991), 60 Ohio St.3d 151, 153, 573 N.E.2d 652; interpreting R.C. 2953.21(C) and (E), as well as R.C. 120.16(A)(1) and (D). The trial court entered an order dismissing the petition without a hearing, concluding that the claims and underlying allegations were meritless. Appellant has given this Court no reason to overturn that decision.
 {¶ 38} Accordingly, the trial court's summary dismissal of Appellant's pro se petition for relief from judgment as provided under R.C. 2953.21 is affirmed.
Judgment affirmed.
Donofrio and Vukovich, JJ., concur.