# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

HEATH WILLIAM BURCH,
      *Petitioner-Appellant,*

v.

THOMAS R. CORCORAN, Warden; J.
JOSEPH CURRAN, JR.,
      *Respondents-Appellees.*

No. 01-4

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CA-98-4054-MJG)

Argued: September 26, 2001

Decided: November 28, 2001

Before WILKINSON, Chief Judge, and NIEMEYER and
KING, Circuit Judges.

_____

Affirmed by published opinion. Judge King wrote the opinion, in
which Chief Judge Wilkinson and Judge Niemeyer joined.

_____

## COUNSEL

**ARGUED:** Henry Mark Stichel, GOHN, HANKEY & STICHEL,
L.L.P., Baltimore, Maryland, for Appellant. Annabelle Louise Lisic,
Assistant Attorney General, Criminal Appeals Division, OFFICE OF
THE ATTORNEY GENERAL, Baltimore, Maryland, for Appellees.
**ON BRIEF:** J. Joseph Curran, Jr., Attorney General of Maryland,

Criminal Appeals Division, OFFICE OF THE ATTORNEY GEN-
ERAL, Baltimore, Maryland, for Appellees.

---

**OPINION**

KING, Circuit Judge:

In 1996, a jury in Prince George's County, Maryland, convicted appellant Heath William Burch of the double murder of Robert and Cleo Davis, and it sentenced Burch to death. Burch has unsuccessfully sought habeas corpus relief in the District of Maryland, and he requests that we reverse the district court and grant habeas corpus relief. In support of that endeavor, Burch makes the following contentions: (1) that the sentencing provisions of Maryland's death-penalty statute are unconstitutional; (2) that the submission of a single Verdict Form to Burch's sentencing jury violated his due process rights; (3) that he received ineffective assistance of counsel at trial; and (4) that a juror's reading from a Bible during the jury's sentencing deliberations violated his constitutional rights. As explained below, these claims are without merit, and we affirm.

I.

In the early morning hours of March 19, 1995, Burch burglarized the home of Robert and Cleo Davis in Capitol Heights, Maryland, intending to steal property that could be sold to support his cocaine habit. When confronted by the Davises, an elderly couple in their 70's, Burch savagely attacked them. Following the assaults, Burch stole their guns, their money, and Mr. Davis's truck. A family friend discovered the Davises the next day, and by that time Mr. Davis had died. Mrs. Davis, who was alive when found on a couch with blood splattered over her, was hospitalized and died eight days after being attacked by Burch. The medical examiner determined that Mrs. Davis died of blunt force injuries and resulting complications. An autopsy performed on Mr. Davis revealed that he had died from thirty-three wounds, of which eleven were stab wounds from the blade of a pair of scissors.

There was overwhelming evidence in Burch's state court trial linking him to the murders of Mr. and Mrs. Davis. Indeed, Burch confessed to the Maryland authorities that he had entered the Davis home and killed its occupants. A boot found in Burch's home matched a bloody footprint in the Davises' home, and traces of the victims' blood were found on clothing in Burch's home. Additionally, Burch's brother testified that on March 19, 1995, the day of the attacks, Burch came to the brother's home with blood on his neck and hands and acknowledged that he had killed two people.

Burch was indicted on April 21, 1995, in the Circuit Court for Prince George's County, for the first-degree murders of both Mr. Davis and Mrs. Davis.[1] The State also sought convictions under Maryland law for the crimes of second-degree murder, voluntary manslaughter, robbery with a deadly weapon, attempted robbery with a deadly weapon, robbery, attempted robbery, and first degree burglary. On July 13, 1995, the prosecution notified Burch of its intention to seek the death penalty on the murder charges.

On March 22, 1996, following a ten-day jury trial, Burch was found guilty on all counts except voluntary manslaughter, which had become inapplicable after the jury found Burch guilty of the various murder charges. After four days of sentencing proceedings, the same jury was instructed on the sentencing issues. In connection therewith, the jury was provided with a form captioned "Verdict Sheet: Findings and Sentencing Determination" ("Verdict Form") to utilize in returning its sentencing verdict. The Verdict Form generally referred to issues in the singular tense: inter alia, "the murder," "the victim," and "the sentence." By way of example, it instructed the jurors to "[e]nter the determination of *sentence* either 'Life Imprisonment' or 'Death' according to the following instructions." J.A. 526 (emphasis added). In doing so, the jurors were required under Maryland law to consider

---

[1]Burch was actually charged in the indictment with eight counts of first-degree murder, four counts as to each victim. Specifically, he was charged with the first-degree premeditated murders of Mr. Davis and Mrs. Davis and with six additional counts of first-degree felony murder based on the underlying felonies of robbery with a deadly weapon, attempted robbery with a deadly weapon, robbery, attempted robbery, and first-degree burglary.

both aggravating and mitigating circumstances. For example, one listed mitigating circumstance was whether "*[t]he murder* was committed while the capacity of the defendant to appreciate the criminality of his or her conduct or conform his or her conduct to the requirements of law was substantially impaired as a result of mental incapacity, mental disorder, or emotional disturbance." *Id.* at 524 (emphasis added). Another possible mitigating factor listed on the Verdict Form was whether "[t]he act of the defendant was not the sole proximate cause of *the victim's death*." *Id.* at 525 (emphasis added).

Burch's trial attorney did not object to the jury's use of the Verdict Form, and on March 29, 1995, the jury returned a verdict of "Death" against Burch. The completed Verdict Form, however, failed to specify whether the jury was returning one or two death sentences. As a result, Burch's lawyer contended, in post-trial proceedings, that only one death sentence could be imposed. The trial court rejected this contention, however, and on April 10, 1996, it imposed two death sentences on Burch — one for the murder of Mr. Davis and a second for the murder of Mrs. Davis. Burch also received consecutive twenty-year prison sentences on three other convictions, i.e., robbery with a deadly weapon, attempted robbery with a deadly weapon, and first-degree burglary. Burch's remaining convictions merged for sentencing purposes, and his aggregate sentence then consisted of two death sentences plus sixty years of imprisonment.

On direct review, the Court of Appeals of Maryland affirmed each of Burch's convictions. *Burch v. State*, 696 A.2d 443 (Md. 1997).[2] However, because the Verdict Form referred in the singular only to "the sentence," the court determined that only one death sentence could properly be imposed on Burch. Finding no difference between the two brutal murders, the court concluded that "it makes no difference which sentence we vacate." *Id.* at 463. It then affirmed Burch's death sentence for the murder of Mr. Davis, vacated his death sentence for the murder of Mrs. Davis, and remanded his case to the cir-

---

[2]When a defendant is sentenced to the death penalty in Maryland, his case proceeds immediately to an automatic review by Maryland's highest court, the Court of Appeals of Maryland. This procedure bypasses Maryland's intermediate appellate court, the Court of Special Appeals. *See* Md. Code Ann., Crimes & Punishments § 414.

cuit court for imposition of a life sentence for the murder of Mrs. Davis. On December 1, 1997, the Supreme Court denied Burch's petition for certiorari in connection with his direct appeal process. *Burch v. Maryland*, 522 U.S. 1001 (1997). As a result of these proceedings, and with the relief accorded him by the Court of Appeals of Maryland, Burch's remaining aggregate sentence was the death sentence for the murder of Mr. Davis, plus sixty years in prison.

Thereafter, Burch unsuccessfully sought post-conviction relief in both the Circuit Court for Prince George's County, *State v. Burch*, Memorandum and Order of Court, No. CT950787X (Circuit Court for Prince George's County July 3, 1998) ("*Burch*, 1998 Memorandum and Order"), and in the Court of Appeals of Maryland, *Burch v. State*, 720 A.2d 322 (Md. 1998).[3] Subsequently, on April 19, 1999, the Supreme Court denied Burch's petition for a writ of certiorari on his state post-conviction review proceedings. *Burch v. Maryland*, 526 U.S. 1073 (1999). Burch then turned to the federal district court, unsuccessfully seeking habeas corpus relief in the District of Maryland. *Burch v. Kavanagh*, Memorandum of Decision, C.A. No. MJG 98-4054 (D. Md. Aug. 18, 2000) ("*Burch*, 2000 Memorandum of Decision"). Although the district court denied Burch's effort to secure federal habeas corpus relief, it awarded him a certificate of appealability.[4] This appeal followed.

---

[3]Maryland's Uniform Postconviction Procedure Act provides the statutory procedure for collateral attacks on criminal convictions and sentences. Md. Code Ann., Crimes & Punishments § 645A (current version at Md. Code Ann., Criminal Procedure § 7-107 (2001)). The common-law remedy of habeas corpus remains available, however, in situations for which the Uniform Postconviction Procedure Act does not provide a remedy. *See Gluckstern v. Sutton*, 574 A.2d 898, 912 (Md. 1990).

[4]In granting Burch a certificate of appealability, the court did not specify the issue or issues on which it deemed such a certificate to be appropriate. It instead stated that it "believe[d] that appeal should be permitted in any capital case in which petitioner raises arguments that rise above a level of frivolity." *Burch v. Kavanagh*, Order, C.A. No. MJG 98-4054 (D. Md. Mar. 2, 2001). In this regard, the court failed to comply with the mandate of 28 U.S.C. § 2253(c), which provides, in pertinent part, that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," § 2253(c)(2), and that the certificate of appealability must "indicate which specific issue or issues satisfy th[at] showing." § 2253(c)(3). The Warden has not, however, challenged Burch's certificate of appealability.

## II.

As a general proposition, the standard of review to be applied by us is quite deferential to the rulings of the state courts. Pursuant to the standards promulgated in 28 U.S.C. § 2254, a federal court may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings unless the state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2).

The Supreme Court has recently addressed this standard of review, and it has determined that a state court adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). According to the Supreme Court, a state court decision unreasonably applies clearly established federal law if, despite correctly identifying the governing legal principle, it "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. With these standards in mind, we turn to the issues raised by Burch in this proceeding.

## III.

In this appeal, Burch makes four separate challenges to the district court's denial of relief on his death sentence for the murder of Mr. Davis. He contends, as we have previously related, that (1) the sentencing provisions of Maryland's death-penalty statute are unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000); (2) the Verdict Form utilized by his sentencing jury violated the principles enunciated by the Supreme Court in *Mills v. Maryland*, 486 U.S. 367 (1988); (3) he received ineffective assistance of counsel at his state court trial; and (4) a juror's reading from a Bible during jury deliberations on sentencing violated his constitutional rights.

## A.

Burch first challenges the constitutionality of part of Maryland's death-penalty statute, contending that its sentencing provisions contravene the Due Process Clause of the Fourteenth Amendment and the notice and jury trial guarantees of the Sixth Amendment. These sentencing provisions, found in section 413 of article 27 (Crimes and Punishments) of the Maryland Code,[5] instruct a sentencing jury to impose the death sentence if it determines, by a preponderance of the evidence, that the aggravating circumstances outweigh the mitigating circumstances. Burch maintains that the sentencing scheme found in section 413 violates the Supreme Court's recent holding in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

Significantly, Burch raised his *Apprendi* claim for the first time in his effort to obtain federal habeas corpus relief. His claim is therefore

---

[5]Section 413 of the Crimes and Punishments article of the Maryland Code provides the sentencing procedure to be utilized after a Maryland jury has found a defendant guilty of first-degree murder. In determining the appropriate sentence, the jury must consider whether any of the aggravating circumstances, specified in section 413(d), have been proven. If the jury finds aggravating circumstances it must then determine, pursuant to section 413(g), whether any mitigating circumstances exist. Section 413(h) then provides instructions on how to weigh the aggravating and mitigating circumstances, as follows:

(1) If the court or jury finds that one or more of these mitigating circumstances exist, it shall determine whether, by a preponderance of the evidence, the aggravating circumstances outweigh the mitigating circumstances.

(2) If it finds that the aggravating circumstances outweigh the mitigating circumstances, the sentence shall be death.

(3) If it finds that the aggravating circumstances do not outweigh the mitigating circumstances, a sentence of death may not be imposed.

Md. Code Ann., Crimes & Punishments § 413(h).

precluded by our recent decision in *United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001). In *Sanders*, we explained that "*Apprendi* is certainly a new rule of criminal procedure." *Id.* at 147. Writing for the court, Chief Judge Wilkinson noted that under *Teague v. Lane*, 489 U.S. 288 (1989), "[n]ew rules of constitutional criminal procedure are generally not applied retroactively on collateral review." *Id.* at 147-48. There are, however, two limited exceptions in which a new rule may apply retroactively on collateral review: (1) if the new rule forbids criminal punishment of certain primary conduct, or (2) if the new rule improves the accuracy of convictions and alters our understanding of the bedrock elements necessary for a fair proceeding, thus making it a "watershed," *Teague*, 489 U.S. at 311, rule of criminal procedure. *Sanders*, 247 F.3d at 148. In *Sanders*, we held that the *Apprendi* rule does not fall under either of the two *Teague* exceptions, and that it therefore does not apply retroactively to cases on collateral review.

Burch's judgment of conviction became final on December 1, 1997, when the Supreme Court denied his petition for a writ of certiorari. *See United States v. Segers*, ___ F.3d ___, No. 00 7427, 2001 U.S. App. LEXIS 23876 (4th Cir. Nov. 5, 2001) (judgment of conviction of prisoner who petitioned for writ of certiorari becomes final on date Supreme Court denies petition). Because his judgment of conviction was final well before the Court's decision in *Apprendi*, and because *Apprendi* does not apply retroactively to cases pending on collateral review, Burch cannot obtain any federal habeas corpus relief under *Apprendi*. As such, we are unable to reach the merits of his *Apprendi* contention.[6]

---

[6]Even if we could address the merits of Burch's claim that *Apprendi* renders Maryland's capital punishment sentencing provisions unconstitutional, his contention would fail. In explaining the basis and reach of *Apprendi*, Justice Stevens rejected the notion that *Apprendi* rendered state death-penalty statutes unconstitutional. *See Apprendi*, 530 U.S. at 496 ("[T]his court has previously considered and rejected the argument that the principles guiding our decision today render invalid state capital sentencing schemes requiring judges, after a jury verdict holding a defendant guilty of a capital crime, to find specific aggravating factors before imposing a sentence of death.").

Burch was convicted of two counts of first-degree murder at the guilt phase of his state court trial in Maryland. Each element of those capital

B.

In his appeal, Burch also maintains that his death sentence violates the principles concerning ambiguous verdict forms enunciated by the Court in *Mills v. Maryland*, 486 U.S. 367 (1988). He claims that use of the flawed Verdict Form in the double murder of Mr. and Mrs. Davis prevented the jury from applying potentially different mitigating circumstances as to each victim, thereby contravening his rights under the Eighth and Fourteenth Amendments of the Constitution. Specifically, he maintains that because self-defense was a possible defense only to the murder of Mr. Davis, and the absence of proximate cause was at issue only as to Mrs. Davis's death, the use of the Verdict Form deprived the jury of the ability to apply these mitigating factors individually.

In its *Mills* decision, the Supreme Court dealt with a verdict form that was ambiguous on the question of whether unanimity was required in order for the jury to find any particular mitigating circumstance. When Mills's sentencing verdict was returned it was unclear whether the jury had unanimously rejected the existence of each mitigating circumstance, or whether the jury was unable to unanimously agree on the existence of any single mitigating circumstance. As a result, the Court vacated Mills's death sentence and accorded him a new sentencing proceeding. There was, in its view, "a substantial probability that reasonable jurors, upon receiving the judge's instructions in this case, and in attempting to complete the verdict form as instructed, well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance." *Id.* at 384.

---

crimes was proven to the jury beyond a reasonable doubt. When the sentencing jury, pursuant to the provisions of section 413(h) of the Maryland Code, determined by a preponderance of the evidence that the aggravating circumstances outweighed the mitigating circumstances and that therefore a death sentence was warranted, it was simply selecting the appropriate sentence from a range of penalties that already included the death penalty. As such, Burch's sentence of death did not violate *Apprendi* because every fact necessary to the capital murder charges already had been "submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.

Burch contends that, just as in *Mills*, his Verdict Form was so con-fusing as to preclude the jury from considering mitigating evidence. Burch maintains that the Verdict Form: (1) prevented the jury from considering mitigating evidence that his acts were not the sole proxi-mate cause of Mrs. Davis's death, and (2) precluded the jury from considering mitigating evidence of self-defense as to the murder of Mr. Davis. As we explain below, we are unable to find merit in either of these contentions.[7]

Burch's claim as to mitigating evidence, i.e., that his acts were not the sole proximate cause of the death of Mrs. Davis, must fail because he is not under a death sentence for that crime. Due to the deficient Verdict Form, the Court of Appeals of Maryland vacated his death sentence for the murder of Mrs. Davis and directed that a life sentence be imposed. Even if the jury was precluded from considering mitigat-ing evidence as to the murder of Mrs. Davis — though we hold no such view — there is no error for us to correct, in that Burch is not under a death sentence as to Mrs. Davis.[8]

---

[7]In both his brief on appeal and at oral argument, the Warden has maintained that Burch failed to exhaust his *Mills* claim in the state courts and that therefore the issue was not properly before this Court. In Burch's brief to the Court of Appeals of Maryland, he extensively argued that the Verdict Form violated Maryland state law. Burch merely refer-enced the Constitution of the United States and the *Mills* decision in passing, and did not explain that *Mills* involved use of an ambiguous and confusing verdict form. Speaking through Justice Brennan, the Supreme Court emphasized in *Picard v. Connor*, 404 U.S. 270, 276 (1971), that before a habeas corpus claim can be addressed in federal court it must have been fairly presented to the state courts, i.e., the state courts must first have "had the first opportunity to hear the claim sought to be vindi-cated." As this Court has stated, "fair presentation contemplates that both the operative facts and the controlling legal principles must be presented to the state court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (internal citations and quotations omitted). We have further observed that "[o]blique references that hint that a theory may be lurking in the wood-work will not suffice." *Id.* Because the question of whether Burch prop-erly exhausted his *Mills* claim could be considered a close question, we proceed to address the merits of his contention.

[8]In the sentencing phase, Burch's lawyer presented a medical expert who opined that Mrs. Davis died of pneumonia rather than from the inju-ries resulting from the savage beating inflicted by Burch. Burch asks us

Burch's second challenge to the Verdict Form is that it precluded the jury from considering the mitigating circumstance of self-defense on the murder of Mr. Davis. In this regard, Burch contends that he acted in self-defense and attacked Mr. Davis with a pair of scissors only after Mr. Davis approached him with a revolver. As we explain more fully below, this challenge must also fail.

The use of the Verdict Form in Burch's trial was governed by the provisions of Rule 4-343(g) of Chapter 300 (Trial and Sentencing), Title 4 (Criminal Causes) of the Maryland Rules, entitled "Sentencing — Procedure in capital cases." Rule 4-343(g) mandates that, in death-penalty cases, "the findings and determinations shall be made in writing in the following form," headed "*FINDINGS AND SENTENCING DETERMINATION*." Pursuant to the provisions of Section IV of Rule 4-343(g), jurors are instructed, based upon the evidence, to make determinations on seven possible mitigating circumstances.[9] The Verdict Form is required to list the seven possible mitigating circumstances contained in Rule 4-343(g), and the jury is provided with boxes to mark one of the following choices:

(a)   We unanimously find by a preponderance of the evidence that the above circumstance exists.

(b)   We unanimously find by a preponderance of the evidence that the above circumstance does not exist.

(c)   After a reasonable period of deliberation, one or more

to conclude that if the jury had been provided with an individualized Verdict Form it would have relied on this evidence to find that Burch was not the sole proximate cause of Mrs. Davis's death. This contention is nearly frivolous. In fact, at his post-conviction hearing, Burch's lawyer admitted that the use of medical testimony to suggest that Burch was not the cause of Mrs. Davis's death caused jury "hostility" toward Burch and did more harm than good. J.A. 676.

[9]After its listing of the seven statutorily enumerated mitigating circumstances, the Verdict Form also provides space for the jurors to list any "additional mitigating circumstances" found to exist by a preponderance of the evidence. Md. Rule 4-343(g).

> of us, but fewer than all 12, find by a preponderance
> of the evidence that the above circumstance exists.

The Verdict Form utilized by Burch's sentencing jury followed the form set forth in and mandated by Rule 4-343(g). The third of the seven listed mitigating circumstances, found in both Section IV of Rule 4-343(g) and the Verdict Form used by Burch's sentencing jury, was that "[t]he defendant acted under substantial duress, domination, or provocation of another person, even though not so substantial as to constitute a complete defense to the prosecution." *Id.* This mitigating circumstance is equivalent to a claim of what is known as "imperfect self-defense."[10]

The Burch jury considered and rejected the mitigating circumstance of imperfect self-defense, marking the second box "[w]e unanimously find by a preponderance of the evidence that the above circumstance does not exist." J.A. 524. Notably, the Burch jury had been instructed about self-defense at the guilt phase of his trial. In that regard, it could have concluded that Burch acted in complete self-defense and exonerated him of the murder of Mr. Davis, or it could have utilized the defense of imperfect self-defense to justify convicting him of the lesser offense of voluntary manslaughter. The jury, however, rejected all possible self-defense claims and found Burch guilty of the first-degree murder of Mr. Davis. Unlike the Verdict Form used in the sentencing phase, there was no ambiguity in the Verdict Sheet used in the guilt phase of Burch's trial.[11] The Verdict Sheet clearly differentiated between the murders of Mr. and Mrs.

---

[10]Under Maryland law, the doctrine of imperfect self-defense is recognized. *State v. Faulkner*, 483 A.2d 759 (Md. 1984). As the Court of Appeals of Maryland has stated, imperfect self-defense "is not a complete defense. Its chief characteristic is that it operates to negate malice, an element the State must prove to establish murder. As a result, the successful invocation of this doctrine does not completely exonerate the defendant, but mitigates murder to voluntary manslaughter." *Id.* at 761.

[11]The jury, in the trial's guilt phase, was provided with a "Verdict Sheet" to record whether it found Burch guilty or not guilty of the charged crimes. Thereafter, in the trial's sentencing phase, it was provided with the Verdict Form on which to record its sentencing findings and determinations for those crimes.

Davis. Because the Burch jury rejected the self-defense claim as to Mr. Davis at the guilt phase, there is no reason to believe that it was confused when it rejected the mitigating factor of self-defense in the trial's sentencing phase. Thus, there is no basis for Burch to contend that the jury was deprived of the opportunity to consider mitigating evidence of self-defense as to the murder of Mr. Davis.

As the Court of Appeals of Maryland has already recognized, the Verdict Form used by the jury in Burch's sentencing was flawed. *Burch v. State*, 696 A.2d 443, 462 (Md. 1997). In comparing Burch's case to *Mills*, however, we do not see a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). In *Mills*, there was a substantial possibility that a confusing verdict form prevented the jury from considering any mitigating evidence. The flawed Verdict Form utilized in connection with Burch's sentencing did not result in confusion precluding the jury from considering mitigating evidence. As such, the decision of the Maryland court on this issue, *Burch*, 696 A.2d at 459-63, was neither "contrary to," nor an "unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

## C.

In his third appellate contention, Burch maintains that the actions of his trial lawyer deprived him of his Sixth Amendment right to effective assistance of counsel. This contention has two prongs. First, Burch contends that his lawyer was constitutionally ineffective in failing to seek two verdict forms in the sentencing phase of his trial. Second, he asserts that his lawyer was ineffective because he failed to present certain mitigating evidence in the trial's sentencing phase. Because Burch's ineffective assistance claims have been adjudicated on their merits in the state court, we must review them under the deferential standard set forth in 28 U.S.C. § 2254(d)(1), as recently explained in *Williams v. Taylor*, 529 U.S. at 403 (stating that prisoner whose claim has been adjudicated on its merits in state court may obtain federal habeas corpus relief only by meeting standard enunciated in § 2254(d)(1)).

1.

We first address Burch's claim that his lawyer's failure to request that two separate verdict forms be submitted to the jury in his sentencing proceedings resulted in the deprivation of his right to effective assistance of counsel. Our analysis of this contention is guided by the principles of *Strickland v. Washington*, 466 U.S. 668, 687 (1984), in which the Supreme Court explained that a meritorious ineffective assistance claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Under the second prong of *Strickland*'s test, there is a "strong presumption" that counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." *Id.* at 689. For counsel's trial performance to be deficient, he must have "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.* at 687, and that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Under *Strickland*, a reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* Furthermore, and of importance here, in conducting the ineffectiveness inquiry, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Id.* at 697.

Even assuming that the failure of Burch's lawyer to seek and secure two verdict forms for the jury's use in the sentencing phase of his trial amounted to deficient performance, thus satisfying *Strickland*'s first prong, this ineffective assistance claim must fail because Burch is unable to satisfy *Strickland*'s second prong, i.e., he cannot demonstrate prejudice. As we have already indicated, even if Burch's lawyer had insisted on two verdict forms instead of one, Burch would nonetheless have received the death penalty for his criminal activity. We agree with the conclusion of the Court of Appeals of Maryland that:

> there can be no question but that all 12 jurors, after weighing the aggravating and mitigating factors that they found to

exist, concluded that appellant should be put to death for at least one, if not both, of the murders. The notions asserted [by Burch]. . . that the jury may have returned two life sentences had it used separate forms to record its decisions have utterly no basis in fact and are no more than unsupported conjecture and speculation.

*Burch*, 696 A.2d at 462. Under *Strickland*, the burden is on Burch to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. Burch has failed to make any such showing. In these circumstances, we are unable to conclude that the district court's rejection of this aspect of Burch's claims was an unreasonable application of the clearly established federal law enunciated by the Supreme Court in *Strickland v. Washington*.

2.

Burch also maintains that he was denied the effective assistance of counsel when his lawyer failed to present certain mitigating evidence in his trial's sentencing phase. Burch asserts that his lawyer: (1) failed to present evidence that Burch would not be dangerous in the future because he had already been incarcerated for 600 days without a disciplinary infraction; (2) failed to call witnesses prepared to testify about Burch's remorse; (3) failed to stress that Burch could never be paroled if he were spared the death penalty; and (4) failed to present witnesses who could have testified about Burch's positive qualities. Appellant's Br. at 41-47.

On state post-conviction review, the circuit court determined that most of the evidence Burch claims was not presented to the sentencing jury *had* in fact been presented. The court found, inter alia, that Burch's lawyer offered "information regarding [Burch's] personality as a child and teenager, the environment in which he was raised, his relationship with his father, and [his] drug addiction." *Burch*, 1998 Memorandum and Order at 12. Moreover, Burch's defense lawyer testified in the state post-conviction proceeding that he had considered and investigated all possible claims of mitigation, and that he had decided, as a matter of litigation strategy, to focus on Burch's drug abuse and family background. As a result of this testimony, the state

court found that the performance of Burch's trial counsel during the sentencing proceedings demonstrated the exercise of reasonable professional judgment, and that Burch had failed to rebut the presumption that his lawyer's strategy was sound. On federal habeas corpus review, the district court concluded on this issue that "[t]he state court's findings are fully supported by the record; are neither contrary to nor an unreasonable application of the *Strickland* standard; and are objectively reasonable." *Burch*, 2000 Memorandum of Decision at 23. After careful consideration of the record, we likewise are unable to conclude that the state court's rejection of Burch's ineffective assistance challenge was an unreasonable application of *Strickland*.

We are not permitted to second-guess the tactical decision of Burch's lawyer not to present every conceivable piece of mitigating evidence. In *Strickland*, the Court recognized that "strategic choices [by counsel] made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690; *see also Burger v. Kemp*, 483 U.S. 776, 794-95 (1987) (refusing to second-guess lawyer's strategic decision not to present any mitigating evidence because defendant would not be served by such evidence); *Darden v. Wainwright*, 477 U.S. 168, 186-87 (1986) (rejecting ineffectiveness challenge to defense counsel's strategy to present only defendant's plea for mercy at sentencing hearing). Burch's defense lawyer made strategic and tactical choices — as he was obliged to do — to focus on Burch's drug use and family background. In so doing, he elicited testimony from Burch's mother, his two sisters, several acquaintances, and a licensed social worker who had twice interviewed Burch. These witnesses painted a consistent picture of Burch growing up with an abusive and alcoholic father, as well as a thorough portrait of Burch's drug use. In this regard, Burch's lawyer presented a substantial amount of mitigating evidence, and Burch is simply unable to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The state court's determination that Burch was not denied the effective assistance of counsel was therefore neither "contrary to," nor an "unreasonable application of" *Strickland*, under the provisions of § 2254(d)(1) and the mandate of the Court in *Williams v. Taylor*, 529 U.S. 362 (2000). Burch's contention on this point therefore fails.

D.

Burch's final claim on appeal is that his First, Sixth, and Eighth Amendment rights were violated because a juror read from a Bible during sentencing deliberations.[12] Burch first raised this issue in his petition for post-conviction relief in the circuit court for Prince George's County. The state court, however, declined to permit Burch's post-conviction lawyer to subpoena jurors to testify about the Bible-reading allegations, although it did consider three affidavits procured from jurors in the case. Based on these affidavits — primarily the affidavit of the juror who had read from a Bible — the state court decided that "the verdict had already been reached before the Bible reading occurred." *Burch*, 1998 Memorandum and Order at 15. According to the state court, the sentencing verdict was "based upon the facts of the case rather than any religious law," and "no misconduct occurred during the jury's sentencing deliberations." *Id.* Burch appealed the denial of his petition for post-conviction relief to the Court of Appeals of Maryland. That court, however, denied the application for leave to appeal and did not address the merits of Burch's Bible-reading allegation or other claims. *Burch v. State*, 720 A.2d 322 (Md. 1998).

Burch again raised the Bible-reading issue in his federal habeas corpus petition in the district court. After its review and consideration of the three affidavits, the court concluded that they "consistently state that a juror brought a bible into the jury room, but are inconsistent regarding certain matters . . . and do not address various matters of potential significance." *Burch v. Kavanagh*, Memorandum and Order, C.A. No. MJG 98-4054 (D. Md. Apr. 27, 1999) at 17. The district court then decided that Burch had not received a full and fair state court hearing on the Bible-reading issue, and it provided Burch an evidentiary hearing on the issue in federal court. At that hearing, conducted on June 21, 1999, each of Burch's trial jurors was ques-

---

[12]Burch contends that a juror's reading of a Bible during sentencing deliberations violates the First Amendment's prohibition against establishment of religion, the Sixth Amendment's guarantee of an impartial jury, and the channeled decisionmaking process required in capital cases by the Eighth Amendment.

tioned individually by a Special Master appointed by the district court.

Based on the evidence provided by the jurors, the district court then found, inter alia, that Juror # 1 was "a Christian with strong religious convictions," and that "[u]nknown to the judge or counsel, [he] carried a Bible (the King James Version, including the New Testament) with him throughout the jury deliberations." *Burch v. Kavanagh*, Memorandum of Decision Re: Ground Six (Bible Issue), C.A. No. MJG-98-4054 (D. Md. Nov. 1, 1999) at 2 ("*Burch*, 1999 Memorandum of Decision Re: Bible Issue"). During the sentencing deliberations the juror "quoted (from memory and, on occasion by reading) from the Bible." *Id.* The district court nevertheless found that the juror "did not rely upon the Bible as a source of law as distinct from the Maryland law as instructed by the judge. Nor did he, in any of his quoting from the Bible, suggest that other jurors should deviate from the law as instructed by the trial Judge." *Id.* As such, "the Bible quotes, whether stated from memory or read from the book," were characterized by the district court as "statements of 'folk wisdom' or of cultural precepts." *Id.* at 2-3.

Interpreting and applying our precedent, the district court observed that "[t]he Fourth Circuit has held that if there has been an unauthorized jury communication, the party seeking to uphold a verdict bears a heavy burden." *Id.* at 3. Without deciding the issue, the court assumed that a juror's act of reading from the Bible during deliberations "could be viewed as an improper communication." *Id.* at 4. Nonetheless, it explained that, because the reading of the Bible in this case "did not constitute an effort to have any juror decide the case on a basis other than the law of Maryland there would still be no improper communication." *Id.* at 4-5. Further, the court found that, even if the evidence in Burch's case is viewed as establishing an improper jury communication, "there is no reasonable possibility that any such communication affected the jury verdict." *Id.* at 5.

We review the findings of fact of a district court in such a proceeding for clear error. *Quesinberry v. Taylor*, 162 F.3d 273, 276 (4th Cir. 1998). On the other hand, legal conclusions made by the district court are reviewed de novo. *United States v. Boone*, 245 F.3d 352, 358 (4th Cir. 2001).

It is clear that the "right to an impartial jury belongs to the defendant," and that "a rebuttable presumption of prejudice attaches to [an] impermissible communication." *Stockton v. Virginia*, 852 F.2d 740, 744 (4th Cir. 1988); *see also Haley v. Blue Ridge Transfer Co., Inc.*, 802 F.2d 1532, 1537 (4th Cir. 1986) ("[A] new trial must be granted if there remains a reasonable possibility that the jury's verdict was influenced by an improper communication."); *United States v. Barnes*, 747 F.2d 246, 250-51 (4th Cir. 1984) ("[T]here is a presumption of prejudice where such improper evidence has been made available to the jury, and the burden is on the government to prove that it is harmless."). In our *Stockton* decision, Judge Wilkinson explained that "while a presumption of prejudice attaches to an impermissible communication, the presumption is not one to be casually invoked." 852 F.2d at 745.

We must heed the admonition of *Stockton*, and we will not casually find constitutional error in this factual setting. We agree with the district court that, under the circumstances, what occurred here did not constitute an improper jury communication. Moreover, even assuming that the Bible-reading incident involving Burch's jury constituted an improper jury communication, the court's clear finding of fact is that there was "no reasonable possibility that the jury verdict was influenced by an improper communication in the form of a quotation from the Bible." *Burch*, 1999 Memorandum of Decision Re: Bible Issue at 8. As such, any presumption of prejudice to Burch is wholly rebutted. Because we are unable to conclude that the district court's finding of fact on this point was clearly erroneous, Burch's Bible-reading claim must fail.

## IV.

For the foregoing reasons, we affirm the district court's decision to deny Burch's petition for a writ of habeas corpus.

*AFFIRMED*