OPINION
Antonio Sanchez Franklin ("Franklin") appeals from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment in favor of the state on his petition for postconviction relief.
In 1997, Franklin was charged with six counts of aggravated murder, nine counts of aggravated arson, and two counts of aggravated robbery. These charges stemmed from the murders of Franklin's grandparents, Ophelia and Ivory Franklin, and his uncle, Anthony Franklin. Franklin beat all three with a baseball bat and shot his grandmother in the face with a .38 Colt revolver. According to the state's theory of the case, he then doused parts of the house with an accelerant and started a fire. Ivory and Anthony Franklin died from a combination of the beatings and smoke inhalation. Ophelia Franklin was dead by the time the fire was started. Before leaving the house, Franklin stole jewelry, wallets, and a gun from the house and from the bodies of the victims. He also stole his grandfather's car and drove it to Tennessee, where he was arrested. Franklin pled not guilty by reason of insanity but was convicted and sentenced to death by a jury in 1998. The direct appeal of his conviction is pending at the Supreme Court of Ohio, Case Number 98-2061.
Franklin filed a petition for postconviction relief pursuant to R.C.2953.21 on August 9, 1999. In his petition, Franklin asserted twenty-two claims for relief, requested a hearing on these claims, and asked the trial court to grant him a new trial. The state filed a motion for summary judgment on November 16, 1999. The trial court granted the state's motion without a hearing on August 23, 2001.
Franklin raises three assignments of error on appeal.
 THE TRIAL COURT ERRED BY DISMISSING APPELLANT'S POSTCONVICTION PETITION, WHERE HE PRESENTED SUFFICIENT OPERATIVE FACTS AND SUPPORTING EXHIBITS TO MERIT AN EVIDENTIARY HEARING AND DISCOVERY.
Under this assignment of error, Franklin challenges the trial court's disposition of nineteen of his twenty-two claims for relief.[1] These claims involve ineffective assistance of counsel, Franklin's competency, prosecutorial misconduct, abuse of discretion by the trial court, and defects in process. We will address these claims in an order that facilitates our discussion.
A postconviction proceeding is not an appeal of a criminal conviction, but a collateral civil attack on a criminal judgment. See State v.Steffen (1994), 70 Ohio St.3d 399, 410. State postconviction review is not a constitutional right. See id., citing Murray v. Giarratano
(1989), 492 U.S. 1, 109 S.Ct. 2765. Therefore, the petitioner receives no more rights than those granted by statute. See State v. Calhoun (1999),86 Ohio St.3d 279, 281.
R.C. 2953.21 provides that a person convicted of a crime may petition the court to set aside that conviction on the ground that the defendant's constitutional rights were violated, thereby rendering that conviction void or voidable. A criminal defendant seeking to challenge his conviction through a petition for postconviction relief is not automatically entitled to a hearing. See State v. Cole (1982),2 Ohio St.3d 112, 113; R.C. 2953.21(C) and (E). Before granting a hearing, the court shall determine whether there are substantive grounds for relief based on the petition, the supporting affidavits, and the files and records of the case. R.C. 2953.21(C).
The trial court dismissed Franklin's first, second, third, fifth, seventh, eighth, ninth, sixteenth, and twentieth claims for relief on the grounds that they were barred by res judicata. If an alleged constitutional error could have been raised and fully litigated on direct appeal, the issue is res judicata and may not be litigated in a postconviction proceeding. See State v. Perry (1967), 10 Ohio St.2d 175,180. If, however, the alleged constitutional error is supported by evidence outside the record as well as evidence appearing in the record, and thus could not have been fully litigated on direct appeal, the issue is not subject to the doctrine of res judicata. See State v. Smith
(1997), 125 Ohio App.3d 342, 348; see, also, Cole, supra, at 114.
In his first claim for relief, Franklin argued that his trial counsel were ineffective during voir dire. He argues now that the trial court erred in dismissing this claim on the basis of res judicata because he submitted evidence outside the record in the form of an affidavit by Joann Jolstad ("the Jolstad affidavit"), an attorney who acts as an expert on the performance of counsel in capital cases. The state argues that an affidavit by a legal expert is not cogent evidence and is essentially notarized legal argument. Several decisions from the First District support this contention. See State v. Hill (June 19, 1998), Hamilton App. No. C-970650, unreported; State v. Hill (Nov. 21, 1997), Hamilton App. No. C-961052, unreported; State v. Zuern (Dec. 4, 1991), Hamilton App. Nos. C-900481, C-910229, unreported.
Franklin points to our decision in State v. Hunter (Mar. 15, 1996), Montgomery App. No. 15305, unreported, to support his contention that an affidavit from a legal expert does constitute evidence outside the record. In Hunter, the trial court dismissed the defendant's petition for postconviction relief based on ineffective assistance of counsel because it found that counsel was not ineffective in failing to call an expert. Hunter, supra. We reversed, noting that, in particular, the affidavit of an attorney stating his opinion that trial counsel was ineffective in failing to call an expert "raised a triable issue in [the] case." Id.
Despite our decision in Hunter, we agree with the First District that the affidavit of an attorney giving an opinion based on facts in the record does not constitute evidence outside the record, but merely legal argument:
 We are convinced, moreover, that the affidavits of the two reviewing defense attorneys do not constitute evidence dehors the record sufficient to preclude the application of res judicata on these claims. Such affidavits as these are not evidence of facts; the record speaks for itself on what Zuern's trial attorneys did or did not do in his defense. Rather, these affidavits merely stated legal arguments which could and should have been raised on direct appeal. Indeed, it would be a relatively simple matter to defeat the application of res judicata in postconviction proceedings if all that was required was to have new, highly-qualified counsel make arguments that could and should have been raised on direct appeal, notarize these arguments in affidavit form, and characterize such material as "evidence dehors the record." Through such a process it would be possible to prolong forever postconviction review of the same claim based on such so-called "new" evidence or evidence dehors
the record.
Zuern, supra. While we recognize that our decision in Hunter may appear to be contrary to our decision here, we note that this issue-whether an affidavit by a legal expert stating that trial counsel was ineffective constitutes evidence outside the record for the purpose of overcoming resjudicata-was not before us in Hunter. Therefore, we find that the trial court did not err in concluding that the Jolstad affidavit was not evidence outside the record. As this was the only evidence that Franklin pointed to as being outside the record, we conclude that the trial court did not err in its decision that this claim was barred by res judicata
because it could have been raised on direct appeal.
In his second claim for relief, Franklin argued that the trial court rendered his counsel ineffective by the restrictions it placed on their questioning during voir dire. He now argues that the trial court erred in dismissing this claim on the basis of res judicata. Whether a trial court abused its discretion in unfairly limiting the scope of voir dire will ordinarily be ascertainable from the record. Therefore, such a claim is barred by res judicata unless it is accompanied by sufficient evidence outside the record. See Smith, supra, at 348. The only external evidence produced by Franklin in support of this claim is the Jolstad affidavit and affidavits from Franklin's trial counsel, Lawrence Henke and John Cumming, detailing the limitations placed on counsel in voir dire and stating that, in their opinions, those limitations prejudiced Franklin.
As we discussed supra, the Jolstad affidavit does not constitute evidence outside the record. The Henke and Cumming affidavits are also not sufficient evidence outside the record. All of the restrictions Henke and Cumming list in their affidavits can be gleaned from the record. Their opinions on the effect of those limitations are, like Jolstad's, merely notarized legal argument. As such, this claim could be fully litigated on direct appeal, and the trial court did not err in determining that it was barred by res judicata.
In his third claim for relief, Franklin argued that he was incompetent to stand trial. He argues now that the trial court erred in dismissing this claim based on its finding that it was barred by res judicata. In support of this argument, Franklin submitted affidavits from Dr. Sharon Pearson, who examined Franklin following his trial and opined that he had not been competent to stand trial, from Suzanne Lough Wynn, who worked with Franklin's defense counsel and observed strange behavior from Franklin, and from Henke and Cumming, who stated that Franklin was unable to assist them in his defense. He also submitted prison records describing his behavior.
The trial court concluded that this claim was barred by res judicata
because the information in these affidavits amounted to nothing more than disagreement with the trial court's decision. We agree. Whether the trial court erred in concluding that Franklin was competent to stand trial must be ascertained from the record. The fact that Franklin is now submitting affidavits from people who disagree with the trial court's decision in that regard does not save this claim from the application ofres judicata. As with the Jolstad affidavit, defendants cannot overcomeres judicata merely by having an expert attest that the trial court erred.
Franklin also argues that his trial counsel were ineffective in failing to request a new competency hearing during the trial. We evaluate ineffective assistance of counsel arguments in light of the two prong analysis set forth in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052. Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of reasonable assistance. See id. at 2064-65. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. See id. at 2064. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. See id. at 2065.
We cannot find that Franklin's attorneys fell below an objective standard of reasonableness in not requesting a new competency hearing during trial. They had already argued Franklin's incompetency to the trial court and lost. With no reason to believe they would be successful on a second attempt, it was a reasonable tactical decision to refrain from requesting a new hearing. Furthermore, as we have no reason to believe that the result would have been different had they done so, Franklin has failed to establish that he was prejudiced. Therefore, we find that the trial court did not err in dismissing this claim without a hearing.
In his fifth claim for relief, Franklin argued that his trial counsel ineffectively represented him because they failed to adequately question potential jurors regarding the extent of their exposure to pretrial publicity and any prejudice resulting from that exposure. He also argued that counsel were ineffective in failing to use all of their peremptory challenges. He contends that the trial court erred in concluding that this claim was barred by res judicata. He offered no evidence outside the record to support this claim except the Jolstad affidavit, transcriptions of various news stories, and two videocassettes containing new stories.
We have discussed the status of the Jolstad affidavit supra. It does not constitute evidence outside the record. The news stories simply affirm that there was extensive coverage of the murders in the local news. This is apparent from the record. Thus, this claim could be fully litigated on direct appeal, and the trial court did not err in finding that it was barred by res judicata.
In his seventh claim for relief, Franklin argued that he was denied the effective assistance of counsel in numerous respects. Some of Franklin's arguments are the subject of their own claims for relief, and we will not discuss them here. In the remaining arguments, Franklin claims that his trial counsel were ineffective because they (1) failed to obtain the 911 tape that led to his arrest, (2) failed to file a motion to suppress statements made in violation of his rights under Miranda v. Arizona
(1966), 384 U.S. 436, 86 S.Ct. 1602, and (3) failed to object to prosecutorial misconduct during closing argument. The trial court found that all of these arguments were barred by res judicata with the exception of the first argument regarding the 911 tape.
Franklin's second and third arguments are apparently supported by the Jolstad affidavit. This affidavit does not overcome res judicata. Because these claims can be fully litigated on direct appeal, they are barred by res judicata.
With respect to the 911 tape, Franklin has presented evidence outside the record in the form of the tape itself. Thus, this argument is not barred by res judicata. However, the trial court still determined that it did not warrant a hearing. The court found that Franklin had failed to raise a genuine issue of material fact regarding whether his counsel's performance fell below an objective standard of reasonableness. Franklin presented no evidence other than the tape itself and the Jolstad affidavit. He argues that the tape, in which the caller stated that Franklin appeared "depressed or disoriented," would impeach the testimony of the Tennessee officer who arrested him and would provide critical evidence regarding his state of mind following the murders. We question the value of the tape to Franklin's defense. How Franklin was described by the caller on the 911 tape has little relevance to how he behaved with the arresting officer, and his state of mind hours after the murders has little relevance to his state of mind at the time of the murders. Thus, Franklin has failed to show that his counsel's performance was deficient or that he was prejudiced by his counsel's failure to obtain the tape. The trial court did not err in dismissing this claim.
In his eighth claim for relief, Franklin argued that the trial court erred in admitting photographs of a tombstone reading "R.I.P. Franklins" that Franklin had tattooed on his arm following the murders. The trial court concluded that this claim was barred by res judicata. The only evidence outside the record that Franklin submitted was the news coverage and the affidavit of a juror stating that the tattoo photos made her feel that Franklin was "proud of what he had done to his family." This evidence was not sufficient to overcome res judicata. We can assume that the evidence had some impact on the jury; that is undoubtably why the state sought to introduce it. Furthermore, given that the tattoo photos were admitted into evidence, it is irrelevant that the tattoo was shown on the news. The propriety of the trial court allowing the photos to come into evidence is a matter for Franklin's direct appeal, not for postconviction relief. Thus, the trial court did not err in dismissing this claim on the basis of res judicata.
In his ninth claim for relief, Franklin argued that the trial court erred in using excessive security measures and that his trial counsel were ineffective in failing to object to those security measures. Although finding the claim to be barred by res judicata, the trial court conceded (and the state concedes) that the videotape of the trial, submitted by Franklin and depicting the security measures, would constitute evidence outside the record because the supreme court would only have a transcription of events on direct appeal. This outside evidence is sufficient to overcome res judicata on this claim. Therefore, the claim is not barred by res judicata.
However, the trial court also concluded that, even though the claim was barred by res judicata, Franklin had not presented sufficient evidence to warrant a hearing on this claim. The security measures that Franklin complains of include (1) being shackled during the sentencing portion of his trial and (2) the presence of deputies during the guilt portion of the trial.
Looking at complaints regarding shackling, the supreme court has stated:
 Ordinarily a prisoner is entitled to appear free of shackles or bonds which would restrict his free movements. It is uniformly held, however, that the prisoner may be shackled when such precaution is shown to be necessary to prevent violence or escape. It lies within the discretion of the trial court to determine such necessity, based upon the conduct of the accused. An appellate court will not reverse the trial court's action except in case of an abuse of that discretion.
State v. Woodards (1966), 6 Ohio St.2d 14, 23 (citations omitted).
In this case, Franklin was not restrained until after the jury found him guilty, so the restraints could have had no impact on the guilt phase of his trial. The trial court concluded that there was evidence to justify the restraints during sentencing. For example, a deputy reported that Franklin's attitude had changed following the guilty verdict, and Franklin's own psychologist had testified that he was dangerous. During trial, Franklin had made gestures that were described as "contemptuous" or "threatening." Given these facts, we find that the trial court did not err in concluding that Franklin's constitutional rights were not violated when he was shackled during the sentencing portion of his trial.
With regard to the presence of an additional deputy in the courtroom during his trial, Franklin is required to show prejudice to establish that he was denied a fair trial. See Holbrook v. Flynn (1986),475 U.S. 560, 568-69, 106 S.Ct. 1340, 1345-46. The mere presence of deputies is not inherently prejudicial. See id. We cannot assume that the jurors in this case inferred anything at all from the presence of the deputy, see id. at 1346, and Franklin has not presented any evidence to the contrary. As Franklin failed to present any evidence of prejudice, the trial court did not err in concluding that this claim did not warrant a hearing.
As to Franklin's claim that counsel were ineffective in failing to object to the security measures, we disagree. We have already concluded that the security measures were not a violation of Franklin's constitutional rights. Therefore, his attorneys were not ineffective in failing to object.
In his sixteenth claim for relief, Franklin argued that he was denied the effective assistance of counsel when trial counsel failed to object to the instruction given by the trial court on mitigating factors. The trial court dismissed this claim on the basis that it was barred by resjudicata. The only evidence outside the record submitted by Franklin on this claim was the Jolstad affidavit. This affidavit does not constitute evidence outside the record. Therefore, the trial court did not err in determining that this claim was barred by res judicata.
In his twentieth claim for relief, Franklin argued that lethal injection constitutes cruel and unusual punishment in violation of theEighth Amendment. In support of this claim, Franklin submitted evidence outside the record. Therefore, the trial court erred in concluding that the claim was barred by res judicata. However, the trial court was correct in stating that this claim has been addressed by the supreme court and has been resolved against Franklin. See State v. Reynolds
(1998), 80 Ohio St.3d 670, 685. Therefore, this claim did not warrant an evidentiary hearing.
Having discussed the claims that the trial court dismissed on the basis of res judicata, we will turn now to Franklin's remaining claims, all of which the trial court concluded did not warrant an evidentiary hearing. As above, we will consider these claims in an order that facilitates our discussion.
In addition to Franklin's first, second, fifth, seventh, ninth, and sixteenth claims, which were dismissed on the basis of res judicata and are discussed supra, the tenth, eleventh, twelfth, and thirteenth claims all raise claims of ineffective assistance of counsel. Specifically, they all relate to the mitigation hearing. As set forth above, we evaluate ineffective assistance of counsel arguments in light of the two prong analysis set forth in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. See id. at 2064.
 In his tenth claim for relief, Franklin argued that his counsel were ineffective in failing to adequately use the services of Dr. Susan Shorr, the mitigation specialist for whom the court had granted funding. In support of this argument, Franklin submitted Dr. Shorr's affidavit, in which she stated that she had not been given adequate time or materials to prepare for Franklin's trial and stated what assistance she could have provided had Franklin's trial counsel fully utilized her. The trial court concluded that the evidence presented with the postconviction petition was merely cumulative to what was actually presented at trial and therefore not sufficient to create a genuine issue of material fact regarding the quality of the representation.
We agree. Although Dr. Shorr did not testify, trial counsel implemented many of Dr. Shorr's suggestions in the mitigation hearing. For example, counsel followed Dr. Shorr's advice in calling Franklin's mother, who is a recovering alcholic, to testify about his childhood, during which she beat him, threatened to kill him, and attempted suicide in his presence. Counsel also followed Dr. Shorr's advice in calling Franklin's girlfriend and her mother to testify regarding Franklin's personality change in the months before the murders. Those areas in which counsel did not follow Dr. Shorr's advice, such as placing a picture of Franklin's grandmother in front of him during trial in the hopes that he would become emotional, could be considered reasonable tactical choices. Therefore, the trial court did not err in concluding that Franklin's counsel were not ineffective in their utilization of Dr. Shorr.
Franklin's eleventh, twelfth, and thirteenth claims for relief are closely related. In his eleventh claim for relief, Franklin argued that trial counsel were ineffective in failing to adequately investigate all of Franklin's friends and family in order to obtain mitigating information. In his twelfth claim, he argued that this failure to investigate resulted in a failure to provide his psychological expert, Dr. Cherry, with sufficient information. In his thirteenth claim, he argued that the failure to investigate and provide Dr. Cherry with the appropriate information resulted in a diagnosis that was incorrect. In support of this argument, Franklin submitted numerous affidavits, most of which contained information that was presented at the mitigation hearing-that Franklin's behavior had changed in the months preceding the trial, that he had abused drugs, that he had behaved strangely. However, the affidavits of Franklin's mother, brother, and former girlfriend also stated that Franklin's uncle, Anthony, had sexually abused him and had sexually abused his mother when she was a child. Furthermore, the affidavit of Franklin's mother stated that her parents had known of her sexual abuse by Anthony and had seemed unconcerned. The affidavits also stated that the defense team had not contacted either of Franklin's siblings and had not discussed his mother's testimony with her prior to the mitigation hearing.
The trial court concluded that Franklin's trial counsel had presented adequate evidence in mitigation and that the additional information in Franklin's affidavits would have been merely cumulative. We agree. The evidence to which Franklin points came in at trial. Dr. Cherry testified that there were indications that Franklin had been abused by his uncle. Therefore, the jury had that information. More importantly, the defense attorneys had the information and can therefore not be deemed incompetent for failing to conduct sufficient investigation to determine its existence. Rather, Franklin's attorneys may well have made a tactical decision not to attack the victims of the crime during the mitigation hearing. Therefore, we conclude that the trial court did not err in dismissing Franklin's eleventh and twelfth claims for relief. With regard to Franklin's thirteenth claim for relief, the trial court did not err in refusing to find that Franklin was denied the effective assistance of counsel simply because the theory pursued by Franklin's attorneys at trial, that he was a paranoid schizophrenic, was unsuccessful where a different theory may have been successful. Therefore, we also conclude that the trial court did not err in dismissing Franklin's thirteenth claim for relief without a hearing.
In his fourth and sixth claims for relief, Franklin argued that he was deprived of a fair trial by the state's destruction and withholding of evidence. His fourth claim for relief involves the destruction of the Franklins' burned house before Franklin's investigators had the opportunity to examine it. The sixth claim for relief involves the state's failure to provide defense counsel with a copy of the 911 tape that led to his arrest in Tennessee following the murders.
The facts relating to Franklin's fourth claim for relief are as follows. Following their investigation on April 24, 1997, police and arson investigators pulled down the remaining walls of the Franklins' house, and it collapsed into a pile of rubble. Although one arson investigator claimed in his affidavit that the house was destroyed by order of the Housing Department, the records of the Department do not support this contention as the house was not brought to its attention until July of 1997. The complaints at the time regarded the large pile of debris. Franklin reasons that the destruction of the house hampered his defense. The defense theory at Franklin's trial was that he had been insane at the time of the murders but that he had not started the fire. The defense argued that the fire had been started by a space heater. The destruction of the house rendered Franklin's investigators unable to determine the location of space heaters in the house and unable to fully support this theory. Whether Franklin had started the fire was especially important at trial because it was the arson and the robberies that elevated Franklin's crimes to aggravated murder and warranted a death penalty specification. To further complicate matters, Franklin notes that the prosecutor, David Franceschelli, made repeated reference to the defense's lack of evidence regarding the origin of the fire and made accusations that defense counsel had placed the space heater at the scene.
The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a criminal defendant from being convicted where the state fails to preserve materially exculpatory evidence or destroys in bad faith potentially useful evidence. See Arizona v. Youngblood
(1988), 488 U.S. 51, 57-58, 109 S.Ct. 333, 337; State v. Benton (2000),136 Ohio App.3d 801, 805; State v. Lewis (1990), 70 Ohio App.3d 624,633-34. To be materially exculpatory, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." California v.Trombetta (1984), 467 U.S. 479, 489, 104 S.Ct. 2528, 2534.
Franklin does not appear to argue that the house contained materially exculpatory evidence. Doing so would be difficult as the crux of Franklin's argument is that the destruction of the house rendered him unable to determine whether it contained exculpatory evidence. Because there is nothing to suggest that the house contained evidence with exculpatory value that was apparent before its destruction, any evidence contained in the house must be considered merely potentially useful.
No due process violation arises from the destruction of potentially useful evidence unless such evidence is destroyed in bad faith. SeeYoungblood, supra, at 57-58; Benton, supra, at 805; Lewis, supra, at 633-34.
 The term "bad faith" generally implies something more than bad judgment or negligence. "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."
State v. Buhrman (Sept. 12, 1997), Greene App. No. 96 CA 145, unreported (citations omitted). Franklin attempts to establish bad faith on the part of the state by noting the lack of a credible explanation for why the house was destroyed and by noting Franceschelli's comments at trial. Apparently, we are to infer bad faith from these facts. While it is unfortunate that the house was destroyed before Franklin's investigators had had an opportunity to examine it, Franklin has not presented sufficient evidence of bad faith as it is defined above. What we have is, at worst, bad judgment or negligence. Bad judgment and negligence are not enough to violate a defendant's due process rights. Moreover, Franceschelli's comments long after the house was destroyed are irrelevant to the required showing of bad faith. Therefore, the trial court did not err in dismissing this claim.
The facts relating to Franklin's sixth claim for relief are as follows. Following the murders, Franklin fled to Tennessee where he was arrested by Officer James Sullivan. Sullivan's arrest of Franklin followed a 911 call in which the caller reported that a young man had been sitting on the steps of a camera shop for over an hour. The caller described the man as "sleepy, or down, or out of it" and stated that he appeared to be "depressed or disoriented." Franklin argues that this description of him is at odds with the testimony of Officer Sullivan and would therefore serve to impeach Sullivan's testimony. Franklin also argues that the tape portrayed him as a "deeply troubled young man" and would therefore have been important as mitigation evidence and would have countered the state's portrayal of Franklin as a "callous young man selling drugs shortly after the brutal murder of three family members."
Franklin did not receive the 911 tape until after his trial, despite making discovery requests to the Tennessee authorities. He argues that the state had a duty to obtain it and to provide it to his defense counsel. In support of this argument, he cites Brady v. Maryland
(1963), 373 U.S. 83, 83 S.Ct. 1194, and Kyles v. Whitley (1995),514 U.S. 419, 437, 115 S.Ct. 1555, 1568, which states:
 But the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable probability" is reached. This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.
The state argues that it never possessed the 911 tape and therefore had no duty to turn it over to Franklin. It further argues that Franklin had equal access to the tape and that it is not the responsibility of the state to obtain evidence that the defendant can obtain on his own. SeeKettering v. Baker (1972), 42 Ohio St.2d 351, 354-55; State v. Hughes
(Nov. 4, 1993), Cuyahoga App. No. 62884, unreported. We agree. There is no evidence that the state had possession of the 911 tape. While the result might be different under Kyles if the tape had been in the custody of Ohio authorities, we do not believe that Kyles obligates the state to procure evidence from other states for the defendant, especially where, as here, that evidence is equally accessible to the defendant.[2]
Therefore, the trial court did not err in finding that the state had not failed to disclose exculpatory evidence.
In his fourteenth claim for relief, Franklin argued that his due process rights had been violated by juror misconduct. This argument is based on the affidavit of a juror, who states that:
 During our sentencing deliberations, several jurors had difficulties, in light of their moral and religious views, to consider the imposition of the death penalty. One evening prior to this process, I went home and reviewed my bible scriptures to deal with my own feelings on this issue. After we began our deliberations, I shared the information I obtained from the Bible with the other jury members.
The trial court found that this claim was barred by Evid.R. 606(B), which prohibits a juror from testifying to impeach a verdict in most cases. We agree with the trial court that this rule would apply. However, as the state concedes, this does not entirely determine the case, as we cannot use Evid.R. 606(B) to avoid considering a possible constitutional violation. See Doan v. Brigano (C.A.6, 2001), 237 F.3d 722, 727-29.
The state argues that the juror's actions in this case did not violate Franklin's constitutional rights. In support of this argument, it citesState v. Arnett (2000), 88 Ohio St.3d 208. In Arnett, the supreme court held that the trial court did not err in looking to scripture in sentencing the defendant. Id. at 222. The court found that the trial court had not relied on an impermissible factor but had merely looked to the influence of the Bible on her consideration of the permissible factors. See id. The court stated, "Much like the judge's background, education, and moral values, the judge's insight from the Bible guided the judge in weighing the statutorily permissible age factor during her deliberations and aided her in justifying, in her mind, the lawful sentence she imposed." Id. at 216. While Arnett is not precisely parallel to the case before us, the reasoning is instructive.
Several federal and state courts have considered issues similar to this one. See Burch v. Corcoran (C.A.4, 2001), 273 F.3d 577, 590-91 (finding no constitutional violation where a juror quoted and read from the Bible during deliberations where an evidentiary hearing revealed that neither the reading juror nor the remaining jurors had relied upon the Bible as a source of law); State v. Kleypas (Kan. 2001), 40 P.3d 139, 205 (finding no constitutional violation where a juror quoted a biblical passage but there was no evidence that it affected any juror's decision); Tennesseev. Harrington (Tenn. 1981), 627 S.W.2d 345, 350 (holding that reversal was warranted where the jury foreman read biblical passages to the jury to support his argument for imposition of the death penalty). It is clear from these opinions that a defendant is entitled to be sentenced based on state law as described by the judge, not based on jurors' interpretation of the Bible. See Burch, supra, at 591; Jones v. Kemp
(N.D.Ga. 1989), 706 F. Supp. 1534, 1559-60. However, exactly what constitutes an improper communication is unclear. Some courts have found that there is no constitutional violation where a Bible is not actually present in the jury room, see, e.g., Kleypas, supra, at 204-05, or where a juror uses a Bible for her own personal use in the jury room, see Jones,supra, at 1560 (dicta).
In the case before us, it does not appear that a Bible was present in the jury room during deliberations. While it is questionable whether the juror's actions in sharing her readings constitutes an improper communication at all, compare Burch, supra, at 591, with Harrington,supra, at 350, Franklin has presented no evidence that the juror's actions had any effect on the jury. We have no affidavits from jurors stating that the juror's actions had any impact on the jury's decision, and even the affidavit of the juror herself does not state that her actions had an effect. Absent any such evidence, we cannot find that the trial court erred in dismissing this claim.
In his fifteenth claim for relief, Franklin argued that he is incompetent to understand and assist with his postconviction proceedings and that these proceedings should have been stayed until his competency is restored. This is not a proper matter for postconviction proceedings. These proceedings are designed to investigate the validity of Franklin's conviction. Franklin is represented by experienced, qualified counsel in these proceedings. His current competency has no bearing on whether his conviction was validly obtained. Nor has Franklin demonstrated how, if competent, he could be of any significant assistance to his counsel in these proceedings. Therefore, the trial court did not err in dismissing this claim for relief.
In his seventeenth claim for relief, Franklin argued that Ohio's postconviction process is inadequate. We have held that the statute is not unconstitutional. See State v. Taylor (June 29, 2001), Greene App. Nos. 2000 CA 77, 2000 CA 103, unreported.
 State post-conviction review is not a constitutional right. State v. Kinley (1999), 136 Ohio App.3d 1, 7, 735 N.E.2d 921, 926, dismissed (2000), 88 Ohio St.3d 1444, 725 N.E.2d 284 (citation omitted). Thus, a petitioner for post-conviction relief receives no more rights than those granted by the post-conviction relief statute, R.C. 2953.21. Id., citing State v. Calhoun
(1999), 86 Ohio St.3d 279, 281, 714 N.E.2d 905, 909. Although R.C. 2953.21 does not grant a petitioner the right to conduct discovery, the statute is not unconstitutional because a defendant has no constitutional right to state post-conviction relief generally.
 Therefore, the trial court did not err in dismissing Franklin's seventeenth claim for relief.
In his twenty-first claim for relief, Franklin argued that, even if none of his individual claims warranted relief, the cumulative effect of the error was sufficient to warrant discovery and a hearing. Franklin's claims presented no constitutional violations such that the cumulative effect of them would warrant a hearing. Therefore, the trial court did not err in dismissing this claim.
The first assignment of error is overruled.
 THE TRIAL COURT ERRED BY FAILING TO PROVIDE AN EFFECTIVE REMEDY.
Under this assignment of error, Franklin argues that Ohio's postconviction statute is unconstitutional because it fails to provide discovery. We have already addressed the constitutionality of R.C. 2953.21
in our discussion of Franklin's seventeenth claim for relief. The statute is not unconstitutional.
The second assignment of error is overruled.
 THE TRIAL COURT ERRED BY FAILING TO RECOGNIZE THAT THE CUMULATIVE ERRORS SET FORTH IN APPELLANT'S SUBSTANTIVE GROUNDS FOR RELIEF MERIT REVERSAL OR REMAND FOR A PROPER POSTCONVICTION PROCESS.
We have already addressed the argument made in this assignment of error in our discussion of Franklin's twenty-first claim for relief. The trial court did not err in failing to grant relief on this claim.
The third assignment of error is overruled.
The judgment of the trial court will be affirmed.
GRADY, J. and YOUNG, J., concur.
[1] Franklin does not challenge the disposition of his eighteenth, nineteenth, and twenty-second claims for relief in this appeal.
[2] Even if we were to impose such a duty on the prosecution, we would still be left with serious doubts regarding the materiality of the tape.